SARAH QUIGLEY-DODD, ADMINISTRATRIX
(ESTATE OF MARSHALL G. MCKIM) *v.*
GENERAL ACCIDENT INSURANCE
COMPANY OF AMERICA ET AL.
(SC 16442)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 14—officially released May 22, 2001

*Wesley W. Horton,* with whom were *Kenneth J. Bartschi* and, on the brief, *Peter J. Bartinik, Sr., Lori N. Bartinik* and *Jason T. Prueher,* certified legal intern, for the appellant (plaintiff).

*Michael M. Wilson,* for the appellee (named defendant).

*Mark A. Milano,* with whom was *Indeg M. Raimundo,* for the appellee (defendant The Aetna Casualty and Surety Company).

*Opinion*

SULLIVAN, C. J. The central issue in this case is whether the trial court properly determined that a choice of law question is not an insurance coverage question subject to compulsory arbitration pursuant to General Statutes § 38a-336 (c),[1] and therefore not

[1] General Statutes § 38a-336 (c) provides: "Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand

subject to de novo review, when the governing law of one of the states involved places a cap on the amount of damages that can be recovered from the tortfeasor. The plaintiff, Sarah Quigley-Dodd, administratrix of the estate of Marshall G. McKim, argues that the choice of law question is a coverage question and, therefore, subject to de novo review. The defendants, General Accident Insurance Company of America (General Accident) and The Aetna Casualty and Surety Company (Aetna), argue that the question is one of damages, and, therefore, not subject to de novo review. We agree with the defendants. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts: In January, 1990, McKim and Peter Lantz traveled to Denver, Colorado, on a ski trip. McKim rented a Jeep Cherokee at the Denver airport. Under the terms of the rental agreement, McKim was the only authorized driver of the jeep. On January 11, 1990, at approximately 11:20 a.m., Lantz was driving the Jeep southbound on Monaco Street in Denver. At the same time, Ronnie Townsend was driving a truck owned by Uintah Freightway eastbound on Stapleton Drive toward that street's intersection with Monaco Street. The two vehicles collided in the intersection. McKim suffered a basal skull fracture and was pronounced dead at the scene.

At the time of the accident, McKim's stepfather was insured by General Accident under a policy that provided underinsured motorist coverage in the amount of $300,000 on each of three cars. The parties agreed that McKim was a family member under the terms of the policy. McKim was insured by Aetna under a policy that provided $250,000 in underinsured motorist coverage. Lantz was insured under a liability policy with a

---

is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

$100,000 limit, and Uintah was insured under a liability policy with a $5 million limit.

The plaintiff commenced arbitration proceedings against General Accident for underinsured motorist benefits, pursuant to the policy's arbitration clause.[2] Two of the questions submitted to the panel of three arbitrators were: (1) whether Lantz was responsible for McKim's death; and (2) in the event that that issue were found in favor of the plaintiff, whether the law of Connecticut or the law of Colorado should govern the amount of damages recoverable by the plaintiff. The panel rendered a decision on December 9, 1998, in which it found that Lantz was 75 percent responsible for McKim's death, and that Colorado law governed

---

[2] The arbitration clause provides: "If we and an insured do not agree:

"1. Whether that person is legally entitled to recover damages under Part C; or

"2. As to the amount of damages;

"the 'insured' may make a written demand for arbitration.

"If the amount of damages the 'insured' demands is $40,000 or less, the matter or matters upon which either party do not agree shall be settled by a single arbitrator. In this event, each party will:

"1. Pay the expenses it incurs; and

"2. Bear the expenses of the arbitrator equally.

"If the amount of damages the 'insured' demands exceeds $40,000, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. In this event, each party will:

"1. Pay the expenses it incurs; and

"2. Bear the expenses of the third arbitrator equally.

"Unless both parties agree otherwise, arbitration will take place in the county in which the 'insured' lives. Local rules of law as to procedure and evidence will apply. Any decision agreed to by the arbitrator(s) will be binding as to:

"1. Whether the 'insured' is legally entitled to recover damages; and

"2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which 'your covered auto' is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator(s) decision. If this demand is not made, the amount of damages agreed to by the arbitrator(s) will be binding."

the determination of the comparative negligence of the operators and the amount of damages recoverable by the plaintiff. Colorado law limits recovery in wrongful death actions to $250,000 when, as in this case, the decedent has not left a widow, widower, minor children or a dependent father or mother. See Colo. Rev. Stat. §§ 13-21-203 and 13-21-102.5 (2000).[3]

The panel found the plaintiff's damages to be $251,986.58.[4] The plaintiff previously had recovered $100,000, the policy limit, in a settlement with Lantz's insurer, and $40,000 in a settlement with Uintah and Townsend. The plaintiff was not entitled to any recovery against the car rental agency because Lantz was not an authorized operator of the Jeep. The panel determined that Lantz's 75 percent portion of the $251,986.58

---

[3] Colorado Revised Statutes § 13-21-203 (2000) provides in relevant part: "(1) All damages accruing under section 13-21-202 shall be sued for and recovered by the same parties and in the same manner as provided in section 13-21-201, and in every such action the jury may give such damages as they may deem fair and just, with reference to the necessary injury resulting from such death, including damages for noneconomic loss or injury as defined in section 3-21-102.5 and subject to the limitations of this section and including within noneconomic loss or injury damages for grief, loss of companionship, pain and suffering, and emotional stress, to the surviving parties who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect, or default; except that, if the decedent left neither a widow, widower, or minor children nor a dependent father or mother, the damages recoverable in any such action shall not exceed the limitations for noneconomic loss or injury set forth in section 13-21-102.5, unless the wrongful act, neglect, or default causing death constitutes a felonious killing, as defined in section 15-11-803 (1) (b), C.R.S., as determined in the manner described in section 15-11-803 (7), in which case there shall be no limitation on the damages recoverable in such action. . . ."

Colorado Revised Statutes § 13-21-102.5 (2000) provides in relevant part: "(3) (a) In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars. . . ."

[4] The record is not clear as to why the award exceeded the $250,000 damages cap.

award was $188,989.93, and that General Accident was responsible for 78.2 percent of that amount. It also found that General Accident was entitled to a credit of $78,260.86 for its proportional share of the $100,000 paid by Lantz's insurer, for a net award of $86,590.13, plus interest of $42,857.88 pursuant to Colorado law. The parties subsequently agreed that the defendants also were entitled to a proportionate credit for the $40,000 payment by Uintah.

The plaintiff moved to vacate the arbitration award pursuant to General Statutes § 52-418,[5] on the grounds that the panel had improperly determined that (1) Lantz was only 75 percent responsible for McKim's death, and (2) the case was governed by Colorado law rather than Connecticut law. During the proceedings on the motion to vacate, the trial court ordered, sua sponte, that Aetna,

---

[5] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators. Notwithstanding the time within which the award is required to be rendered, if an award issued pursuant to a grievance taken under a collective bargaining agreement is vacated the court or judge shall direct a rehearing unless either party affirmatively pleads and the court or judge determines that there is no issue in dispute.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the Attorney General, in writing, of such filing within five days of the date of filing."

against which the plaintiff previously had commenced separate proceedings, be made a party to this case. Both General Accident and Aetna moved to confirm the award.

In her brief to the trial court in support of her motion to vacate, the plaintiff argued that the choice of law issue is a coverage issue subject to compulsory arbitration pursuant to § 38a-336 (c) and, therefore, subject to de novo review. The trial court concluded that the choice of law issue was not a coverage issue, but affected only the amount of damages that could be awarded. Accordingly, it concluded that the arbitration was not compulsory pursuant to § 38a-336 (c). It further concluded that, because the submission to arbitration was voluntary and unrestricted, the arbitrators' decision was subject to limited review by the court. The court granted the defendants' motion to confirm and rendered judgment accordingly. The plaintiff appealed from the judgment to the Appellate Court, and we granted the plaintiff's motion to transfer the appeal to this court pursuant to Practice Book § 65-2.[6]

The plaintiff claims on appeal that: (1) the trial court improperly determined that the choice of law question was not a coverage issue subject to compulsory arbitration under § 38a-336 (c), and, thus, not subject to de novo review; (2) the arbitrators improperly determined that Colorado law governed this dispute; and (3) there was no substantial evidence to support the arbitrators' finding that Lantz was only 75 percent responsible for

---

[6] Practice Book § 65-2 provides in relevant part: "After the filing of an appeal in the appellate court, but in no event after the case has been assigned for hearing, any party may move for transfer to the supreme court. The motion, addressed to the supreme court, shall specify, in accordance with provisions of Section 66-2, the reasons why the party believes that the supreme court should hear the appeal directly. A copy of the memorandum of decision of the trial court, if any, shall be attached to the motion. The filing of a motion for transfer shall not stay proceedings in the appellate court. . . ."

McKim's death. We conclude that the choice of law question is not a coverage question for purposes of § 38a-336 (c), and, accordingly, that the trial court properly determined that the arbitration award was not subject to de novo review. We further conclude that the trial court properly held that the plaintiff had raised no issue that would justify vacating the award under the restricted standard of review for a voluntary and unrestricted submission to arbitration.

Whether the choice of law question in this case is a coverage issue subject to compulsory arbitration pursuant to § 38a-336 (c) is a matter of statutory interpretation. "Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

The language of § 38a-336 (c) does not provide an answer to the question before us. See footnote 1 of this opinion. Nor is "coverage" defined elsewhere in the statutes. Accordingly, we begin with a review of the statute's legislative history and purpose, and our cases construing § 38a-336 (c) and its predecessors. In *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 657–58, 591 A.2d 101 (1991), we stated that "General Statutes (Rev. to 1989) § 38-175c [now § 38a-336] was first enacted in 1967 as § 4 of Public Acts 1967, No. 510. See *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 470–71, 370 A.2d 1011 (1976). Until 1971, [the uninsured motor-

ist statutes] left the matter of uninsured motorist coverage almost entirely to regulation by the insurance commissioner, without any reference to arbitration of such coverage. In 1967, this court held in *Frager* v. *Pennsylvania General Ins. Co.*, 155 Conn. 270, 231 A.2d 531 (1967), that an uninsured motorist arbitration clause in a liability policy embraced only the issues of liability of the uninsured motorist and the amount of the insured plaintiff's ensuing damages, but left issues of coverage to the court. Recognizing that removing coverage issues from arbitration would have implications for the administration of justice, we rejected the contention that our holding would clog the courts with piecemeal litigation. Id., 278. We expressed confidence that the insurance commissioner's regulatory powers would be sufficient to protect the public against possible abuse by insurers, such as 'involving claimants in unwarranted litigation and procedural complexities or in delaying tactics intended to bring to bear on claimants the compulsive force of economic attrition.' Id., 279.

"Ultimately, however, the legislature did not share that confidence, for in 1971 it enacted Public Acts 1971, No. 767, later codified in General Statutes (Rev. to 1989) § 38-175c [now § 38a-336]. That section provides as follows: 'Every such [automobile liability] policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for *final determination of [uninsured motorist] insurance coverage* in such arbitration proceeding.' . . . Although the legislative history of that public act does not reveal any discussion on the floor or in committee hearings, we have regarded the 1971 amendment to [the uninsured motorist statute] as intended legislatively to overrule '[t]he holding in *Frager* . . . to the extent that it held that an insurer could contractually limit those issues relating to coverage which the arbitration panel could

decide.' *Oliva* v. *Aetna Casualty & Surety Co.*, 181 Conn. 37, 41, 434 A.2d 304 (1980). We therefore held in *Oliva* that '[t]he expressed intent and effect of the aforesaid amendment to [the uninsured motorist statute] is to remove from the court and to transfer to the arbitration panel the function of determining, in the first instance, all issues as to coverage under automobile liability insurance policies containing uninsured motorist clauses providing for arbitration.' Id., 42. It is fair to infer, therefore, that the purposes of the arbitration provision of § 38-175c [now § 38a-336], which we have characterized as a compulsory arbitration provision; see *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 626, 509 A.2d 467 (1986); were to avoid the institutional difficulty perceived by the court in *Frager*, namely, clogging the courts with piecemeal litigation, and leveling the procedural playing field by guarding against the possibility of insurers unfairly using their superior economic resources to delay the final resolution of claims by their insureds." (Emphasis in original.)

In *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987), this court, recognizing the fundamental differences between voluntary and compulsory arbitration and the constitutional concerns raised by the latter, held that "where judicial review of compulsory arbitration proceedings required by § 38-175c (a) (1) [now § 38a-336 (c)] is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators."

The plaintiff cites three cases in which this court considered whether the issue on appeal was a coverage issue subject to § 38a-336 (c): *Wilson* v. *Security Ins. Group*, supra, 199 Conn. 618 (*Wilson I*); *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 178; and

*Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 610 A.2d 1212 (1992).[7]

[7] The plaintiff also cites several cases in which we have engaged in de novo review of the uninsured motorist issue on appeal without addressing the question of whether the issue was a coverage issue. See *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 377–78, 641 A.2d 783 (1994) (reviewing de novo questions of whether arbitrators and trial court properly determined choice of law issue and concluded that suit was barred by New York no-fault law); *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 770–71, 621 A.2d 262 (1993) (reviewing de novo question of whether arbitrators and trial court properly determined that payments made by insurance company to another injured passenger should be credited against amount of award); *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 763–65, 621 A.2d 258 (1993) (same); *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 30, 610 A.2d 1292 (1992) (reviewing de novo question of whether arbitrators and trial court properly determined that payment made by tortfeasor personally should be credited against amount of award).

The plaintiff argues that, because de novo review of uninsured motorist arbitration proceedings is appropriate only when the arbitration is compulsory, and arbitration is compulsory only when coverage issues are involved, the fact that this court engaged in de novo review in the foregoing cases means that those cases involved coverage issues. The parties in those cases, however, simply may have assumed that arbitration of all uninsured motorist claims is compulsory, and thus failed to raise the question of whether a coverage issue was implicated. Cf. *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 488, (noting that trial court had assumed that arbitration proceedings had been compulsory with respect to every issue before arbitrators; noting that "we have never held, that any . . . issues [other than coverage issues] arising under an uninsured motorist policy are required to be arbitrated"; and holding that question of whether punitive damages are recoverable under uninsured motorist policy is coverage issue). Alternatively, the parties in those cases may have assumed that the question on appeal was a coverage issue. In either case, there is no indication that our de novo review of the issues under appeal in those cases was predicated on undisclosed, preliminary determinations by this court that the issues were coverage issues. We decline simply to assume that such determinations were made. Accordingly, we conclude that those cases are of little, if any, guidance in this case.

We also note that in *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 520-21, 710 A.2d 1343 (1998), the plaintiffs argued that, because this court applied de novo review in *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 359, the court must have determined that the submission to arbitration in that case was restricted. We concluded in *Hutchinson* that *Williams* "did not involve the question of the scope of

In *Wilson I*, supra, 199 Conn. 624, we implicitly held that the stacking of uninsured motorist coverages and the defendant's entitlement to a workers' compensation setoff were coverage issues that must be submitted to arbitration, and we affirmed the trial court's order for arbitration. See *Kent* v. *Middlesex Mutual Assurance Co.*, 226 Conn. 427, 627 A.2d 1319 (1993) (reviewing de novo question of stacking of coverage). Although we concluded in *Wilson I* that issues governed by statute were not, as the defendant in that case had argued, outside the scope of the compulsory arbitration statute; *Wilson I*, supra, 623–24; we did not hold that all issues involving the interpretation or application of statutes were coverage issues. Nor did we engage in any analysis of the distinctive characteristics of coverage issues, as opposed to damages issues. In *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 536–37, 569 A.2d 40, cert. denied,

judicial review of an arbitration award but, rather, involved a choice of law issue." *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 521. We did not explain, however, why the scope of judicial review was not an issue in *Williams*, or why this court applied de novo review to the choice of law issue in that case. As previously noted, it is possible that the parties in that case simply assumed that the choice of law question was subject to de novo review, and thus failed to raise the issue on appeal. Nevertheless, we recognize that *Williams* and *Hutchinson*, standing alone, could be read to mean that a choice of law question, per se, is subject to de novo review. Nor did we explain in *Hutchinson* why the issues that we characterized as coverage issues in that case were not subject to de novo review. Again, it is possible that the parties in that case simply assumed that no issues would be subject to de novo review if the submission were unrestricted, and, thus, failed to raise the issue of whether the coverage questions were subject to the compulsory arbitration statute. Nevertheless, we recognize that, as the defendants appear to argue, *Hutchinson*, standing alone, could be read to mean that unrestricted submissions simply are not subject to de novo review.

We conclude, however, that, because the issue of compulsory arbitration pursuant to § 38a-336 was not raised in either *Williams* or *Hutchinson*, neither of those cases provides guidance in this case.

The plaintiff also cites several cases where we addressed the question of whether the issue on appeal was a coverage issue to be determined in arbitration or, instead, an arbitrability issue to be determined by the court. Those cases are, for reasons discussed later in this opinion, not relevant to the present discussion.

498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), cert. denied, 502 U.S. 1005, 112 S. Ct. 640, 116 L. Ed. 2d 658 (1991) (*Wilson II*), following the arbitration ordered in *Wilson I*, we concluded that stacking was not a reasonable expectation under the terms of the insurance contract in that case, and that, under the policy and governing insurance regulations, the insurer was entitled to a workers' compensation setoff.

In *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 191, we held for the first time that, because coverage issues are subject to compulsory arbitration, the reviewing court must conduct de novo review of the arbitrators' decisions on those issues. We then reviewed de novo the plaintiff's claim that it was entitled to set off the amount owed to the defendant under the underinsured motorist policy by the amount that was paid to the defendant under an insurance policy issued to a dram shop, and we concluded that, under the governing insurance statutes and regulations, it was not entitled to do so. Id., 191–99. Again, however, we did not engage in any analysis of why the setoff claim was a coverage issue.

In *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 488, we noted that not all legal issues arising under an uninsured motorist policy are subject to compulsory arbitration, and we held that an award for future medical treatment was a damages issue not subject to the statute. We also held that "[b]ecause . . . the availability of punitive damages involved a 'final determination of insurance coverage,' § 38-175c [now § 38a-336] made arbitration of this issue compulsory, not voluntary." Id., 492. We noted that the type of punitive damages sought by the plaintiff was the attorney's fees incurred by the plaintiff in his action against the insurer. Id., 492–93. We recognized that, under general insurance law, underinsured motorist carriers are not required to pay attorney's fees incurred in establishing

the right to indemnification unless there is an express contractual term to the contrary. Id., 497. We further noted that public policy disfavored allowing the claimant to recover attorney's fees for pursuit of a claim against his own insurer that was premised on the egregious misconduct of the tortfeasor. Id., 499. Accordingly, we held that attorney's fees are not a type of damages covered by uninsured motorist policies. Id.

The plaintiff argues that those three cases establish that an issue affecting the amount that the insurer stands to lose under the policy is a coverage issue. The defendants respond that such an interpretation of § 38a-336 (c) would make all issues, including damages determinations, coverage issues subject to de novo review. The plaintiff counters that her position is much narrower than the defendants suggest, and she provides the following illustration: A fact finder initially determines that a claimant sustained one million dollars in damages. That finding is clearly related to damages and not subject to de novo review. Any subsequent question involving the interpretation of a policy term or governing law that affects how much of that one million dollars the plaintiff can recover from the insurer, however, is a coverage question and, as such, is subject to de novo review. The plaintiff argues that the question in this case falls under the second prong of this illustration.[8]

---

[8] The plaintiff also argues that Black's Law Dictionary (7th Ed. 1999) defines "coverage" as "[i]nclusion of a risk under an insurance policy", and, in turn, defines "risk" as "[t]he amount that an insurer stands to lose," and, therefore, that the term "coverage" means "[t]he amount that an insurer stands to lose." In addition, she cites a Wisconsin case, *Smith* v. *National Indemnity Co.*, 57 Wis. 2d 706, 712, 205 N.W.2d 365 (1973), for the proposition that " 'coverage' " means "not only the type of risks but the dollar limits of liability or amount of indemnity." We note that, as the defendants point out, the court in *Smith* simply recognized that the dollar amount of the policy limits is a coverage question. Id. We have no quarrel with that conclusion. To the extent that the plaintiff urges this court to take a broader view, however, i.e., that *any* question that affects the insurer's exposure is a coverage issue, we agree with the defendants that, under such an interpretation, coverage issues would include damages and liability issues. For reasons more fully discussed later in this opinion, we conclude that the legislature

We agree with the plaintiff that her interpretation, as limited by the hypothetical she has provided, is not as broad as the defendants suggest. We also accept the plaintiff's hypothetical as the appropriate paradigm for determining whether an issue is a coverage issue or a damages issue. Thus, we conclude that whether a question is a coverage issue does not turn on whether we are required to construe the insurance policy or governing law. Rather, we conclude that that question turns on whether the governing law that we are construing deals with the measure of damages that can be recovered *from the tortfeasor* under the first prong of the plaintiff's hypothetical, in which case the question is a damages issue, or with a limitation on the recovery of damages *from the insurer* under the second prong of the plaintiff's hypothetical, in which case it is a coverage issue. As a corollary, we conclude that coverage issues, unlike damages issues, require us to determine the respective rights and obligations of the parties to a contract of insurance, *as such.*

This conclusion is bolstered by our decision in *Frager* v. *Pennsylvania General Ins. Co.*, supra, 155 Conn. 270. We note that, under the General Accident policy at issue in this case, the parties agreed to arbitrate "[w]hether the 'insured' is legally entitled to recover damages . . . ." In *Frager*, we held that a similar clause referred to "(1) the insured's right to recover damages *from the owner or operator of an uninsured automobile,* and (2) the *amount* of such damages";[9] (emphasis added)

did not intend that all issues arising in uninsured motorist claims would be coverage issues subject to compulsory arbitration. Accordingly, we decline to adopt the definitions of coverage proposed by the plaintiff.

[9] In *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 367–68, 641 A.2d 783 (1994), we stated that the phrase " '[l]egally entitled to collect damages from the owner or driver of an uninsured motor vehicle,' means that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability." We rejected the plaintiff's argument that the phrase "simply requires the injured party to prove fault by the uninsured motorist and the extent of damage."

id., 275; and did not include coverage issues. We held that "[i]t is not the right to recover damages from the defendant insurance company which is made arbitrable but the right to recover damages from the uninsured motorist." Id. We recognized that the owner or operator of an uninsured vehicle could be liable in tort to the claimant without the uninsured motorist insurer's being liable. Id., 277. The tort liability of the uninsured motorist was subject to the agreement to arbitrate, but whether the insurer's obligation to pay had been triggered was a coverage issue, and not arbitrable under the terms of the policy. Id., 276–77.

It was our holding in *Frager* that impelled the legislature to enact § 38a-336 (c) to ensure that coverage issues would be arbitrated. See *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 658. Although § 38a-336 (c) legislatively overruled our holding in *Frager* that the parties to an uninsured motorist policy could agree not to arbitrate coverage issues, it did not change the scope of *voluntary* arbitration. Thus, *Frager*'s holding that the right to recover damages from an uninsured motorist, and the amount of such damages, are subject to a standard arbitration clause is still valid.

Our conclusion that a question that requires us to determine the rights of the parties to an insurance con-

---

Id., 365. As previously noted in this opinion, however, we did not, in *Williams*, engage in an analysis of whether the choice of law issue in that case was a coverage issue subject to § 38a-336 (c) or, instead, was subject to the policy's arbitration clause. See footnote 7 of this opinion. Therefore, we do not read *Williams* to mean that whether the other motorist was uninsured is an issue covered by the arbitration clause and not a coverage issue subject to § 38a-336 (c). Cf. *Frager* v. *Pennsylvania General Ins. Co.*, supra, 155 Conn. 276 (whether automobile is "uninsured automobile" is coverage question). *Williams* simply stands for the propositions that the motorist must be uninsured before the claimant can recover from his uninsured motorist insurer, and the insurer's liability to the claimant is limited by substantive laws governing the tortfeasor's liability, a principle that we reaffirm in this case.

tract under the terms of the insurance policy and governing insurance law, as distinct from the amount of damages that the claimant can recover from the uninsured motorist, is a coverage issue, is also bolstered by the cases cited by the plaintiff. In *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 480, *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 178, and *Wilson I*, supra, 199 Conn. 624, the issues before the arbitrators clearly did not involve the claimant's right to recover from the owner or operator of the uninsured vehicle or the measure of damages. In *Bodner*, for example, the question was whether, under the terms of the policy and governing insurance law, the specific *type* of damages that the claimant sought to recover from the insurer—i.e., attorney's fees incurred by the plaintiff in establishing his right to indemnification—was covered by his uninsured motorist policy, a question that clearly falls under the second prong of the plaintiff's illustration. The measure of the damages that the claimant could recover from the tortfeasor was not in issue in that case.

Similarly, in *Wilson II* and *DelGreco*, there was no question concerning the measure of the damages that could be recovered from the uninsured motorist. The questions in *Wilson II* were (1) whether the claimant could, under the terms of the insurance policy, increase his recovery from the insurer by aggregating the coverage on multiple vehicles, and (2) whether, under the governing insurance regulations, the insurer was entitled to a setoff for workers' compensation payments to the claimant. In *DelGreco*, the question was whether the insurer could reduce the claimant's recovery by the amount paid to the claimant by a particular type of third party. Again, all of these questions clearly involve the claimant's right to recover damages from the insurer—in other words, the rights of the parties to an insurance contract, as such, under the terms of the

insurance policy and governing insurance law—not the claimant's right to recover from the uninsured motorist.

We further conclude that, in cases in which the issue before the arbitrators is a choice of law issue, when the substantive laws of the respective states deal with the claimant's right to recover damages from the uninsured motorist, or the measure of such damages, rather than the recovery of damages from an insurer, the choice of law issue is a damages issue and not a coverage issue, even though the choice of law may affect the amount of damages awarded to the claimant, and, ultimately, the amount recovered from the insurer. The essential point is that when the focus is on tort law governing the right to recover damages from the uninsured motorist or the measure of such damages, the issue is a damages issue, and when the focus is on law governing recovery against an insurer as such, the issue is a coverage issue. A damages issue is not converted into a coverage issue simply because the arbitrators are required, as a preliminary matter, to determine which state's law governs the measure of damages.

The following hypothetical further illustrates this point: State A has a law providing that punitive damages against a tortfeasor are limited to attorney's fees and nontaxable costs. State B has no such limitation. These laws do not deal with the rights of the various parties under an insurance contract, as such, but govern the measure of damages. Accordingly, a choice of law question involving them would affect the amount that the claimant could recover from the tortfeasor and would be a damages issue. Under the law of state B, however, a claimant may not recover punitive damages from a tortfeasor's insurer, while state A permits such recovery. These laws govern the recovery against an insurer, and a choice of law question involving them would be a coverage question subject to de novo review. Therefore, we reject the plaintiff's suggestion that, if we conclude

that the choice of law issue in this case is not a coverage issue, we will be foreclosed from reviewing de novo all choice of law questions arising in uninsured motorist cases.

Accordingly, whether the choice of law question in this case is a coverage issue turns on whether the substantive laws of the respective states govern, on the one hand, the claimant's right to recover damages from the uninsured motorist or the measure of such damages, or, on the other hand, the recovery of damages from the insurer. We look, therefore, to the language of the respective statutes.

The Colorado wrongful death statute provides in relevant part that "if the decedent left neither a widow, widower, or minor children nor a dependent father or mother, the damages recoverable in any such action shall not exceed the limitations for noneconomic loss or injury set forth in section 13-21-102.5 . . . ." Colo. Rev. Stat. § 13-21-203 (1) (2000). Section 13-21-102.5 limits noneconomic damages to $250,000. Connecticut's wrongful death statute contains no such limitation on damages. See General Statutes (Rev. to 1989) § 52-555.[10]

The plaintiff argues that "the amount of damages," which, the plaintiff concedes, is an issue subject to voluntary arbitration, means the amount of damages that were incurred by the claimant as a factual matter, independent of any legal limitation. Therefore, the Colo-

---

[10] General Statutes (Rev. to 1989) § 52-555 provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

rado statute does not, and indeed, no statute could, limit the amount of damages, per se. Instead, the plaintiff argues, the statute limits the amount of damages that a claimant can recover from the insurer. We disagree.

The phrase "the amount of damages" does not, as the plaintiff suggests, exist in a legal vacuum. Damages are created by law. There is no extra-legal standard, for instance, on the basis of which a fact finder could determine that noneconomic injuries to a decedent's family, such as loss of consortium, either should or should not be compensable by money damages. Such injuries are not compensable under General Statutes (Rev. to 1989) § 52-555; see *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 197, 523 A.2d 1301 (1987); but are under the Colorado statute. That is a legislative choice that sets the stage for the fact finder's determination. Thus, it is essentially meaningless to speak of damages that a fact finder could award to a claimant independent of any governing law. Accordingly, we conclude that "the amount of damages," an issue that the plaintiff concedes is subject to voluntary arbitration, means the amount of damages recoverable from the uninsured motorist as limited by governing law.

The Colorado statute, unlike the insurance laws and regulations that we construed in *Wilson II*, *Bodner* and *DelGreco*, does not directly govern insurance contracts or the respective rights and obligations of the parties thereto, as such. Rather, the statute limits the amount of damages in wrongful death actions regardless of whether, or under what type of policy, the parties are insured, and does not affect contractual rights under the policy. Thus, the statute operates in the first instance to limit the amount of damages that a plaintiff can recover from a tortfeasor, and, as does any law governing the measure of damages, only incidently limits the amount that the plaintiff can recover from an insurer. Nor does the fact that the maximum damages authorized under

the statute may be less than the claimant's hypothetical damages under another state's law convert the choice of law issue into a coverage issue. The resolution of that issue affects only the amount of damages recoverable from the uninsured motorist. Accordingly, we conclude that the choice of law issue in this case is a damages issue and not subject to de novo review.

Moreover, even if we were to conclude that the law governing recovery from an uninsured motorist and the law governing recovery from an insurer are inextricably intertwined, so that the choice of law issue in this case fairly could be characterized as either a damages issue or as a coverage issue, the legislative purpose underlying § 38a-336 (c) would require us to treat it as a damages issue. We previously have recognized the legislative policy favoring arbitration of uninsured motorist claims underlying § 38a-336 (c). In *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 664, we stated that "the state has a substantial interest, as expressed in the compulsory arbitration provision of § 38-175c [now § 38a-336 (c)], in providing a procedure for the resolution of uninsured motorist coverage disputes that is ordinarily less costly and more timely than traditional litigation." With this policy in mind, this court has, in cases involving the determination of whether an issue was an arbitrability issue for the court or a coverage issue subject to compulsory arbitration, placed its thumb on the side of coverage. In *Gaudet* v. *Safeco Ins. Co.*, 219 Conn. 391, 399, 593 A.2d 1362 (1991), we held that "[w]here an issue may fairly be characterized as either (1) an issue of arbitrability, i.e., a question for the courts to decide in the first instance, or (2) an issue of insurance coverage, i.e., a question for an arbitrator to decide in the first instance, legislative policy requires the court to elect the latter characterization . . . ." We concluded that the question of whether a vehicle had been converted by the claimant and the

operator of the vehicle was a coverage issue rather than a preliminary arbitrability issue to be determined by the court. See *Lane* v. *Aetna Casualty & Surety Co.*, 203 Conn. 258, 265, 524 A.2d 616 (1987) (recognizing that legislative policy favoring arbitration would be thwarted if arbitrators were required to interpret policy in one proceeding while courts determined effect of statute in another); id.(holding that failure to exhaust liability coverage of tortfeasor is a coverage issue); *Security Ins. Co. of Hartford* v. *DeLaurentis*, 202 Conn. 178, 186, 520 A.2d 202 (1987) (recognizing legislative policy favoring arbitration); id., 184 (holding that whether underinsured motor vehicle is "uninsured automobile" under policy is question of coverage); *Stevens* v. *Hartford Accident & Indemnity Co.*, 39 Conn. App. 429, 434, 664 A.2d 826 (1995) (recognizing legislative policy favoring arbitration and holding that whether claimant was resident of household entitled to uninsured motorist benefits was coverage issue subject to predecessor to § 38a-336 [c]); *Quinn* v. *Middlesex Ins. Co.*, 16 Conn. App. 209, 211–13, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988) (recognizing legislative policy favoring arbitration and holding that status of one claiming to be insured relative of named insured is a coverage question).

We also note that we previously have held, as a general matter, that, "because we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability . . . ." (Citation omitted.) *White* v. *Kampner*, 229 Conn. 465, 472–73, 641 A.2d 1381 (1994). "An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Emphasis in original; internal quotation marks omit-

ted.) Id., 473. Thus, it is clear that, *in the absence of the compulsory arbitration statute,* if the parties to an insurance contract agreed to exclude coverage issues from arbitration and a dispute arose concerning whether an issue was a coverage issue or a damages issue, any doubt would be resolved in favor of finding it to be a damages issue covered by the arbitration clause. It would be perverse to conclude that the legislature intended to change this rule when it required coverage disputes to be arbitrated.[11]

Section 38a-336 (c) was enacted by the legislature in response to this court's ruling in *Frager* v. *Pennsylvania General Ins. Co.,* supra, 155 Conn. 274, that parties to an insurance contract could contract to exclude coverage issues from arbitration. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 218 Conn. 658. The purpose of the legislation was "avoid[ing] the institutional difficulty perceived by the court in *Frager,* namely, clogging the courts with piecemeal litigation, and level-

---

[11] The plaintiff argues that, if this court construes the term "coverage" narrowly for purposes of determining whether arbitration is compulsory, then arbitrators' decisions will be insulated from judicial review, thereby raising the same constitutional concerns over compulsory arbitration that this court addressed in *American Universal Ins. Co.* v. *DelGreco,* supra, 205 Conn. 178. As we noted in *White* v. *Kampner,* supra, 229 Conn. 472–73, however, this court has always resolved doubts as to whether an issue is covered by an agreement to arbitrate in favor of finding arbitrability, and severely restricted the scope of its review of resulting arbitration decisions, without thereby raising constitutional concerns about due process or access to the courts. We see no reason why such concerns should arise in uninsured motorist cases merely because of the existence of the compulsory arbitration statute.

Furthermore, we are not persuaded by the plaintiff's argument that, if the term "coverage" is narrowly construed, parties will be forced to pursue separate arbitration proceedings for coverage and noncoverage issues in order to protect their right to de novo review of coverage issues. The question of whether an issue is a coverage issue always may be raised by a party and decided by the trial court in proceedings on an application to vacate an arbitration award. See General Statutes § 52-418. Bifurcated arbitration proceedings would provide no additional protection to the parties.

ing the procedural playing field by guarding against the possibility of insurers unfairly using their superior economic resources to delay the final resolution of claims by their insureds." Id. We recognize that, in this case, it is the injured party who is seeking "to delay the final resolution" of the case, and not the insurer. That fact, however, does not deter us from recognizing and implementing the well established legislative policy favoring arbitration. We also recognize the anomaly that, by enacting § 38a-336 (c) with the purpose of guarding against piecemeal litigation, the legislature unwittingly ensured that parties to an insurance contract can always obtain de novo judicial review of coverage issues. See *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 191. It need hardly be said, however, that ensuring de novo review of uninsured motorist disputes was very far from being the *purpose* of that legislation.

The legislative policy favoring arbitration necessarily implies a policy favoring binding arbitration. See *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 664 (recognizing state interest in avoiding burdens on judicial process and parties inherent in de novo review of arbitration proceedings). This, in turn, implies a legislative desire that, if an issue before the arbitrators fairly may be characterized as either a damages issue or a coverage issue subject to de novo review, the court should treat it as a damages issue. To do otherwise would thwart legislative policy by increasing the number of cases where "[arbitration] proceedings [are] merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid." Id., 660.

Having concluded that the choice of law issue in this case was not a coverage issue subject to de novo review, it remains for us to set forth the proper standard of review. It is well established that, in voluntary and

unrestricted arbitrations, the reviewing court is limited to determining whether the panel's award conforms to the submission. *American Universal Ins. Co.* v. *Del-Greco,* supra, 205 Conn. 186. "Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . . Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . Thus, we have previously held that the parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits." (Citations omitted.) Id., 186–87.

There is no claim in this case that the submission to arbitration was restricted. We agree with the trial court's conclusion that the decision of the arbitrators was not outside the submission of the parties. Accordingly, we conclude that the trial court properly confirmed the arbitration decision.

The judgment is affirmed.

In this opinion the other justices concurred.