[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO REARGUE AND FOR RECONSIDERATION OF ITS APPLICATION TO VACATE ARBITRATION AWARD
The case is before the court on the defendant's motion to reargue and for reconsideration. The defendant filed a motion to reargue and for reconsideration after the court denied its application to vacate the arbitration award. The defendant argues that the court applied the wrong standard of review and that under the correct standard of review, review de novo, the defendant should prevail. The plaintiff opposes reargument and reconsideration and contends that even under a de novo review, the court will find that the arbitration award is correct. On July 13, 2001, the court, Melville, J., granted the defendant's motion to reargue. The court held a hearing on the outstanding issues on April 10, 2002. The court finds that it applied the wrong standard of review to the defendant's application and therefore, it will reconsider its decision under the correct standard.
The plaintiff in this matter is Susan A. Mingione, executrix of the estate of her husband Phillip A Mingione, plaintiffs decedent. The defendant in this matter is Transamerica Insurance Company. At issue is the amount of uninsured motorist benefits available to the plaintiff as a surviving dependant under the insurance policy that covered her husband. The following facts are undisputed. The case concerns the events of May 25, 1994, when the plaintiffs decedent was fatally injured while working as a voluntary auxiliary trooper for the state police. The plaintiffs decedent was working on the crossover between the travel lanes of Interstate 91 in North Haven, Connecticut. On that date, an unidentified hit and run vehicle caused the vehicle driven by Rosa Quezada to go out of control, veer across all northbound lanes of Interstate 91 onto the crossover and strike the decedent causing his death.
The plaintiff submitted claims to the defendant pursuant to the terms of an insurance policy the defendant issued to the State of Connecticut to insure its state troopers. The decedent was a covered insured under the policy. The policy afforded single limit uninsured motorist coverage of one million dollars. The plaintiff submitted two claims for uninsured motorist benefits to the defendant, one for wrongful death and the other for loss of consortium. According to the evidence presented to the arbitrator, the plaintiff receives workers' compensation death benefits as her husband's dependent pursuant to General Statutes § 31-306.[1]
The total workers' compensation benefits both paid and payable to the CT Page 9234 plaintiff exceed the total amount of uninsured motorist benefits available to her under the defendant's policy. The dispute concerns whether the defendant is entitled to set-off the amount of the workers' compensation benefits paid or payable to the plaintiff from the amount of uninsured motorist benefits available under the defendant's policy.
The defendant contends that it is entitled to set-off the workers' compensation benefits received by the plaintiff from the amount of available uninsured motorist benefits. The plaintiff disagrees asserting that the workers' compensation benefits were paid directly to her and did not pass through the decedent's estate, therefore those benefits are not duplicative of the benefits available to the estate under the defendant's policy. According to the plaintiff, she and her husband's estate are separate entities with distinct separate legal rights. Therefore, the defendant is not entitled to set-off the amount of the benefits paid directly to her.
The policy provides for arbitration in the event the parties disagree as to the amount of coverage or the amount of damages. When the parties were unable to resolve their differences over the issue in dispute, the plaintiff filed an application for an order to proceed with arbitration. The court, Moran, J., granted the order on February 5, 1996. The case was heard by a panel of arbitrators. The panel issued a written award on September 15, 1999. The arbitrators found that the workers' compensation payments made to the plaintiff upon the death of the decedent belong wholly to her and therefore, the defendant is not entitled to a set-off. The arbitrators awarded the decedent's estate $900,000.[2] They also found that "the aforesaid award exhausts the available uninsured motorist coverage, and, therefore, no consideration is given to the Loss of Consortium claim."
The defendant filed a motion to vacate the arbitration pursuant to General Statutes § 52-419[3] in which it asserts that the arbitrators so imperfectly discharged their duties that there has been no final adjudication on the issues. The defendant also argues that the arbitrators construction of the insurance policy was erroneous, and that they misapplied the law. The plaintiff filed an application to confirm the arbitration award in which she asserts that the arbitrators correctly determined that the workers' compensation benefits she is entitled to receive as a result of the decedent's death belong solely to her in her individual capacity and not to his estate, and, therefore, that the arbitrators did not err in determining that the defendant was not entitled to a set-off for such benefits from the uninsured motorist benefits payable to the decedent's estate.
The judicial standard of review of legal issues related to arbitration CT Page 9235 awards depends upon "whether the arbitration was voluntary or compulsory, and, if voluntary, whether the submission was restricted or unrestricted." Maluszewski v. Allstate Ins. Co., 34 Conn. App. 27, 32,640 A.2d 129, cert denied, 229 Conn. 921, 642 A.2d 1214 (1994). "InAmerican Universal Ins. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171
(1987), this court, recognizing the fundamental differences between voluntary and compulsory arbitration and the constitutional concerns raised by the latter, held that `where judicial review of compulsory arbitration proceedings required by § 38-175c (a)(1) [now §38a-336 (c)] is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators.'" Quigley-Dodd v. GeneralAccident Ins. Co. of America, 256 Conn. 225, 234, 772 A.2d 577 (2001).
Because coverage issues are subject to compulsory arbitration, the reviewing court must conduct a de novo review of the arbitrators' decisions on those issues." Id., 237. "When, as in this case, the issue is whether an uninsured motorist insurer is entitled to a setoff for the benefits the insured is eligible to receive from other sources, the issue is one of coverage and requires the court to conduct a de novo review as to the arbitrators' conclusions of law." Travelers Ins. Co. v.Pondi-Salik, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0378956 (August 3, 2001, Rush, J.) (30 Conn. L. Rptr. 231), citing to Buell v. American Universal Ins. Co., 224 Conn. 766,770-71, 621 A.2d 262 (1993). Further,
 "whether a question is a coverage issue does not turn on whether we are required to construe the insurance policy or governing law. Rather, we conclude that that question turns on whether the governing law that we are construing deals with the measure of damages that can be recovered from the tortfeasor . . . in which case the question is a damages issue, or with a limitation on the recovery of damages from the insurer . . . in which case it is a coverage issue. [W]e conclude that coverage issues, unlike damages issues, require us to determine the respective rights and obligations of the parties to a contract of insurance, as such." (Emphasis in original.) Quigley-Dodd v. General Accident Ins. Co. of America, supra, 256 Conn. 225. 239.
The defendant's policy states, in pertinent part: "If we and an `insured' disagree whether the `insured' is entitled to recover damages from the owner or driver or an `uninsured motor vehicle' or do not agree as to the amount of damages, either party may make a written demand for CT Page 9236 arbitration. . . . A decision agreed to by two of the arbitrators will be binding. . . ." Moreover, General Statute § 38a-336 (c) provides, in pertinent part: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding.". Pursuant to this statute, and the authority cited above, arbitration of insurance coverage is compulsory. See Bodner v. UnitedServices Automobile Assn., 222 Conn. 480, 488, 610 A.2d 1212 (1992). Thus, this court must "conduct a de novo review of the interpretation and application of the law by the arbitrators." American Universal Ins. Co.v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171 (1987).
The defendant contends that it is entitled to set-off the amount plaintiff has and will receive. The case turns on whether the workers' compensation benefits the plaintiff received belong solely to her as a separate legal entity from the decedent's estate. The plaintiff contends that they do and therefore, the defendant is not entitled to a set-off of these benefits. The court disagrees.
The policy at issue contains a provision that provides:
 "Regardless of the number of covered `autos,' `insureds,' premiums paid, claims made or vehicles involved in the `accident,' the most we will pay for all damages resulting from any one `accident' is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations. Any amount payable under this coverage shall be reduced by: a) All sums paid or payable under any workers' compensation, disability benefits or similar law, and b) All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE." (Defendant's Memorandum, p. 2-3.).
Pursuant to state regulation, an insurer is allowed to reduce the limit of its liability for bodily injury. Specifically, § 38a-334-6 (d) of the Regulations of Connecticut State Agencies provides:
"(1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection 14-112 of the General Statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . (B) paid or are payable under any workers' compensation law. . . . (3) Any payment under these coverages shall reduce the company's obligation CT Page 9237 under the bodily injury liability coverage to the extent of the payment."
Further, the Supreme Court, in defining the parameters of reductions an uninsured motorist benefit carrier can lawfully take, stated:
 "We see nothing in the language of regulation 38-175a-6 (d) [now § 38a-334-6 (d)] that quantifies the kinds of damages that must be paid before a valid reduction in uninsured motorist benefits may occur by reason of any payments made pursuant to the workers' compensation law. If damages are paid pursuant to the workers' compensation law, the uninsured motorist coverage may be reduced accordingly. General Statutes § 38-175c [now § 38a-336[4]] contains no mandate that uninsured motorist coverage benefits may not be reduced. . . . [T]he plain words of the statute [§ 38a-336] simply require that each policy provide a minimum level of uninsured motorist coverage for the protection of persons insured thereunder. The statute does not require the uninsured motorist coverage be made available when the insured has been otherwise protected . . . or when the uninsured motorist has other resources available to protect the insured. Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that coverage limits shall not be reduced under proper circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of protection." (Emphasis in original; internal quotation marks omitted.) Wilson v. Security Ins. Co., 213 Conn. 532, 538, 569 A.2d 40 (1990).
By allowing an uninsured motorist carrier to reduce the limit of its liability by workers' compensation benefits paid to the insured, the state regulation promotes the public policy of not permitting an insured to obtain a double recovery. The legislative intent of General Statutes38a-336 was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage. Monsees v. Cigna Property Casualty Ins. Co., Superior Court, CT Page 9238 judicial district of Hartford/New Britain at New Britain, Docket No. 452744 (March 19, 1993, Langenbach, J.) (8 Conn.L.Rptr. 525). Our regulations prevent double recovery by providing for certain reductions, including payments received from workers' compensation. Just as plaintiff would be prevented from obtaining double recovery, it also would be inequitable to subject plaintiff to a double reduction by permitting a set-off of an amount when plaintiff has already reimbursed the amount." Id. The Supreme Court has noted its support of this public policy in stating: "offsetting workers' compensation benefits against uninsured motorist coverage benefits ensures compensation while preventing a double recovery because workers' compensation benefits provide an alternative protection available to the insured." Vitti v. Allstate Ins. Co.,245 Conn. 169, 194, 713 A.2d 1269 (1998). Moreover, General Statutes § 38a-336 (b) provides, in pertinent part:
 "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage."
The plaintiff relies on Jackson v. Berlin Construction Co., 93 Conn. 155,105 A. 326 (1918), for the proposition that workers' compensation benefits can be classified as payable to separate, independent and distinct entities and thus may not be subject to set-off. The plaintiff also relies on Iowa case law to support the same proposition. These cases are distinguishable from the instant case. In Jackson, the injury at issue occurred two years before the decedent's death and the decedent had received compensation payments personally, prior to his death. The benefits for the decedent's death did not arise until that event occurred and therefore, the decedent had no personal interest in these benefits, except for the burial expense provided. The death benefits awarded to the wife, therefore, were to benefit her, not the estate and thus were not to be offset by the benefits the decedent received prior to his death. The court reasoned, "The intent of the Workmen's Compensation Act to make the claim of the injured employee for compensation for his incapacity a personal claim belonging to him alone, and to make the claim of the dependent for compensation come into existence upon the employee's death and to belong wholly to the dependent, and neither to be the subject of CT Page 9239 set-off, counterclaim or recoupment against the other, seems entirely clear. . . ." Id., 158. As the court noted, "the [Workers' Compensation Act] provides two distinct forms of compensation, the one for incapacity, the other for death; the one payable to and belonging to the employee, the other payable to and belonging to the dependent." Id., 159.
The court was not, however, addressing the issue of whether such benefits may be set-off from other insurance benefits that become available upon the death of an insured. The only benefits at issue in the present case are those that become available upon the death of an insured. It is not the case here that the decedent was incapacitated for a period of time and received workers' compensation benefits personally during that time. Thus, the facts of this case are not on point withJackson because the defendant is not trying to set-off benefits that were paid to the plaintiffs decedent personally, but rather the death benefits that were paid to the plaintiff as a dependent pursuant to § 31-306, which it is entitled to do by law.
Further, in a footnote in a more recent case, the Supreme Court noted that
 "[i]n Biederzycki v. Farrel Foundry Machine Co., 103 Conn. 701, 704-05, 131 A.2d 739 (1926), however, we cast doubt on the breadth of our statement in Jackson [concerning separate and independent entities], observing that Jackson merely `holds that the classes of compensation awarded the employee and his [or her] dependents are separate and independent of each other. But each arises out of the same compensable injury. If the employee is awarded compensation for an injury, and in consequence of it, subsequently dies, the injury preceding the death and the death arose out of the one injury, compensation for the latter is payable to and belongs to the dependent, while the compensation awarded to the living employee is payable to and belongs to him [or her].'" Duni v. United Technologies Corp., 239 Conn. 19, 26 n. 8, 682 A.2d 99 (1996).
In further support of her argument, the plaintiff cites to Iowa case law. In McClure v. Employers Mutual Casualty Co., 238 N.W.2d 321, 328
(1976), the appellate court of Iowa determined that "workmen's compensation cannot be deducted from uninsured motorist insurance in theabsence of man festation of legislative intent that it may." (Emphasis added.) As discussed above, the Connecticut legislature expressly stated CT Page 9240 its intent that uninsured motorist carriers may limit the amount of their liability by the amount of workers' compensation benefits. See Regs., Conn. State Agencies § 38a-334-6 (d).
Moreover, the defendant cites to a North Carolina Supreme Court case which is more on point. In Liberty Mutual Ins. Co. v. Ditillo,348 N.C. 247, 499 S.E.2d 764, 768 (N.C. 1998), the North Carolina Supreme Court held that the provisions in the insurance policies at issue, which reduced uninsured motorist benefits by all sums paid or payable under workers' compensation law, were enforceable. The court ruled that,
 "the limitation of liability provision in the UM coverage section of the Liberty Mutual and State Farm policies is authorized by N.C.G.S. § 20-279.21(e) and that, to the extent workers' compensation benefits were paid or are payable, Liberty Mutual and State Farm are entitled to reduce the UM coverage available under respective automobile insurance policies." Id.
Furthermore, a North Carolina Statute states, in pertinent part:
 "Uninsured or underinsured motorist coverage that is provided as part of a motor vehicle liability policy shall insure that portion of a loss uncompensated by any workers' compensation law and the amount of an employer's lien determined pursuant to . . . In no event shall this subsection be construed to require that coverage exceed the applicable uninsured or underinsured coverage limits of the motor vehicle policy or allow a recovery for damages already paid by workers compensation. (Emphasis added.). North Carolina General Statute § 20-279121(e)."
Thus, the North Carolina case law and statute are more applicable to this case.
This court finds that the intent of the Connecticut legislature as expressed in § 38a-334-6 (d) would be properly served by allowing an uninsured motorist carrier to reduce the limits of its liability by the amount of the death benefits paid or payable to a decedent's dependent pursuant to § 31-306. The regulation itself specifically permits an uninsured motorist insurance carrier to reduce its policy limits "to the extent that damages have been . . . paid or are payable under any workers' compensation law. . . .". Moreover, the public policy behind the legislation, i.e., preventing an insured from receiving a double recovery, is served by allowing this limitation. In attempting to CT Page 9241 accomplish the twin policy objectives of uninsured motorist coverage of providing coverage as if the tortfeasor had been adequately insured, and at the same time precluding double recovery, the regulations of the insurance commissioner may at times present some apparently anomalous results. Vitti v. Allstate Ins. Co., supra, 245 Conn. 169, 190. The application of § 38a-334-6 (d) may leave each claimant in a different position, "some better and some worse, depending on various factors relating to the limits of coverage and available resources. Id. This is a necessary, and not unacceptable, reality of this state's uninsured motorist scheme. The purpose of mandatory insurance, minimum liability insurance levels, and uninsured motorists protection requirements can only be to ensure that certain minimum protections are afforded all motorists. Id. These statutory devices cannot serve to eliminate all differences in treatment which may result to an insured due to the varying levels of insurance carried by motorists or because of varying financial resources of motorists. Id., 190-191.
The plaintiff argues that she will not receive a double recovery as she has filed a third party claim against Rosa Quezada and the owner and lessee of the vehicle Quezada was driving, and the State of Connecticut has intervened in this action pursuant to General Statutes § 31-293. General Statutes § 31-293 allows an employer to intervene in an employee's action against a tortfeasor to recover the workers' compensation benefits it has paid or is obligated to pay to the injured employee. Section 31-293, is, however inapplicable to the present action and will not be considered. See Dodd v. Middlesex Ins. Co., 242 Conn. 375,379, 698 A.2d 859 (1997) (court concluded § 31-293 (a) does not apply to uninsured motorist coverage).
For the foregoing reasons, the court vacates its decision dated November 27, 2000, denying the defendant's application to vacate the arbitration award and granting the plaintiffs application to confirm the award. It is hereby ordered that the defendant's application to vacate the arbitration award is GRANTED and the plaintiffs application to confirm the award is DENIED.
MELVILLE, J.