[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION TO VACATE ARBITRATION AWARD (#101)
On December 1, 1988, Aetna Casualty Surety Company issued an automobile insurance policy to the State of Connecticut (policy). The plaintiff, Travelers Insurance Company is the successor corporation to Aetna Casualty Surety Company. The policy included a section for uninsured motorist coverage which provided that amounts paid thereunder are subject to a one million dollar limit and shall be reduced by amounts paid under workers' compensation, disability benefits or similar law, amounts paid by anyone who is legally responsible and amounts paid under the liability coverage portion of the policy.
On August 30, 1989, while operating a vehicle insured under the policy and acting in the performance of her duties as a Connecticut state trooper, the defendant, Michelle Pondi-Salik, was injured in an automobile accident. As a result of the injuries she sustained in the accident, the defendant recovered workers' compensation benefits and disability retirement benefits under General Statutes § 5-192p. It is undisputed that the defendant became disabled as a result of the injuries she incurred in the accident, that she was performing her duties as a state employee at the time of the accident and that she was what the state of Connecticut refers to as a tier II employee.
In accordance with General Statutes § 38a-336 and the terms of the policy, the defendant filed an uninsured motorist claim with the plaintiff. Pursuant to General Statutes § 38a-336 (c)[1] and the policy,[2] the claim was submitted to arbitration and was heard by a panel of three arbitrators. On October 30, 2000, the majority of the arbitrators found in favor of the defendant and awarded her $827,025.62. Specifically, the arbitrators stated: "We find the issues in favor of the claimant, and find that the claimant is entitled to gross damages of $2,224,540 comprised of $1,474,540 for economic damages and $750,000 in CT Page 10797 non-economic damages. We further find that the claimant was contributorily negligent in the amount of 10% and therefore reduce the gross award to $2,002,086. We find that the total uninsured motorist coverage is $1,000,000 and that amount should be reduced by $172,974.38 representing workers' compensation benefits received. We therefore find in favor of the claimant and award her the sum of $827,025.62 which is the balance of the uninsured motorist coverage." (Award.) On the issue of the benefits the defendant is eligible to receive under General Statutes § 5-192p, the arbitrators found that such benefits are retirement benefits, as opposed to disability benefits, and thus should not be deducted from the amount awarded to the plaintiff. (Submission of Issues, ¶ 11.) One of the arbitrators issued a dissenting opinion in which he stated that he disagreed with the majority's refusal to reduce the award by the benefits paid and payable to the defendant pursuant to § 5-192p.[3] (Dissenting Opinion.)
On November 16, 2000, the plaintiff filed an application to vacate the arbitration award and contends that the arbitrators erred in not deducting the benefits the defendant received under § 5-192p from the uninsured motorist benefits they awarded to her.
General Statutes § 52-418 provides the means by which a court can vacate an arbitration award.[4] The judicial standard of review of legal issues related to arbitration awards depends upon "whether the arbitration was voluntary or compulsory, and, if voluntary, whether the submission was restricted or unrestricted." Maluszewski v. Allstate Ins.Co., 34 Conn. App. 27, 32, 640 A.2d 129, cert. denied, 229 Conn. 921,642 A.2d 1214 (1994). "In American Universal Ins. Co. v. DelGreco,205 Conn. 178, 191, 530 A.2d 171 (1987), this court, recognizing the fundamental differences between voluntary and compulsory arbitration and the constitutional concerns raised by the latter, held that `where judicial review of compulsory arbitration proceedings required by § 38-175c (a)(1) [now § 38a-336 (c)] is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators.'"Quigley-Dodd v. General Accident Ins. Co. of America, 256 Conn. 225,234, 772 A.2d 577 (2001). "[W]e held . . . that, because coverage issues are subject to compulsory arbitration, the reviewing court must conduct de novo review of the arbitrators' decisions on those issues." Id., 237. When, as in this case, the issue is whether an uninsured motorist insurer is entitled to a setoff for the benefits the insured is eligible to receive from other sources, the issue is one of coverage and requires the court to conduct a de novo review as to the arbitrators' conclusions of law. Buell v. American Universal Ins. Co., 224 Conn. 766, 770-71,621 A.2d 262 (1993); see also Stephan v. Pennsylvania General Ins. Co.,224 Conn. 758, 763, 621 A.2d 258 (1993). CT Page 10798
The plaintiff argues that the arbitration award should be vacated because the policy and § 38a-334-6 (d) of the Regulations of Connecticut State Agencies require that the arbitrators reduce the award by the disability retirement benefits the defendant is eligible to receive pursuant to § 5-192p. The plaintiff contends that once this reduction is made, the defendant is not entitled to receive any uninsured motorist benefits because the amount of these benefits exceed the policy limit of one million dollars. In opposition, the defendant argues that the arbitration award should not be vacated because the arbitrators were correct in deciding that the benefits the defendant is eligible to receive under § 5-192p are retirement benefits, not disability benefits, and thus should not be set off from her award under either the policy or § 38a-334-6 (d).
General Statutes §§ 38a-334 through 38a-336 govern uninsured motorist coverage provided for in automobile liability insurance policies. It is noted that General Statutes § 38a-336 (b) and §38a-334-6 (d) of the Regulations of Connecticut State Agencies, were amended effective October 1, 2000, and November 1, 2000, respectively. Pursuant to these amendments, it is arguable that an insurer is no longer entitled to reduce the limits of its liability for uninsured motorist benefits by the amount of disability benefits an insured is eligible to receive. but both parties base their arguments on the previous versions of the legislation.[5]
General Statutes § 38a-336 (a)(1) provides, in pertinent part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334[6], with limits for bodily injury or death not less than those specified in subsection (a) of section 14-122, [14-112], for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, including death resulting therefrom. . . ."
Prior to October 1, 2000, General Statutes § 38a-336 (b) provided: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ." CT Page 10799
Prior to November 1, 2000, § 38a-334-6 of the Regulations of Connecticut State Agencies provided, in pertinent part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. . . . (d) Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workers' compensation law or disability benefits law, or (3) paid under the policy in settlement of a liability claim. . . ." (Emphasis added.) Regs., Conn. State Agencies (Rev. to 1992) §38a-334-6. In conjunction with this version of § 38a-334-6 (d), the portion of the plaintiffs policy applicable to uninsured motorist coverage provided that: "Any amount payable under this coverage shall be reduced by: a. All sums paid or payable under any workers compensation, disability benefits or similar law, and b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage." (Policy, Endorsement No. 19, § D, ¶ 2.)
"The legislative policy favoring uninsured motorist coverage is contained in General Statutes [§ 38a-336 (a)] which requires every automobile liability insurance policy to include such coverage `for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . .' The accompanying regulation [§ 38a-334-6 (a)] of the Regulations of Connecticut State Agencies, accordingly provides: `The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. . . .'
"This regulatory pattern establishes the public policy that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute. . . . To implement this established policy, we have held repeatedly that an insurer may not, by contract, reduce its liability for such uninsured . . . motorist coverage except as [§ 38a-334-6] of the Regulations of Connecticut State CT Page 10800 Agencies expressly authorizes." (Emphasis in original; internal quotation marks omitted.) Streitweiser v. Middlesex Mutual Assurance Co.,219 Conn. 371, 376, 593 A.2d 498 (1991).
It is significant, then, in the context of this case, that the regulation does not expressly provide that an insurer may reduce its liability by benefits paid to the insured under retirement benefits laws. Accordingly, the parties agree that the issue is whether the benefits the defendant received under § 5-192p should be categorized as disability benefits and thus set off from the policy limit, or as retirement benefits and not set off from the limit. The plaintiff contends that the benefits are a type of disability benefits, and not retirement benefits, because the statute predicates the receipt of benefits on the disability of the employee. In addition, the plaintiff relies on Vitti v. Allstate Ins. Co., 245 Conn. 169, 713 A.2d 1269
(1998), in which, according to the plaintiff, the court found that §38a-334-6 (d) allows a set off for all laws providing for disability benefits. To the contrary, according to the defendant, the benefits she is entitled to receive under § 5-192p are retirement benefits that she is eligible to receive as a result of her disability, not disability benefits she is eligible to receive as a result of her disability. The defendant argues that the fact that she was disabled is significant only because it accelerated the date upon which she became eligible to receive retirement benefits. Therefore, the defendant argues, these benefits should not be deducted from the policy limit. Furthermore, the defendant argues that the plaintiffs reliance on Vitti v. Allstate Ins. Co. is misplaced because the issue decided therein was the deductibility of social security disability benefits and such benefits can be distinguished from the benefits at issue here.[7]
The first step, then is to determine the nature of the benefits available under § 5-192p. "In construing our statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Quigley-Dodd v. General AccidentIns. Co. of America, supra, 256 Conn. 232. "[W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law. . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter." (Citations omitted; internal quotation marks omitted.) Derwin v. State Employees Retirement Commission, 234 Conn. 411,420, 661 A.2d 1025 (1995). CT Page 10801
"If the language of the statute is plain and unambiguous, we will not look beyond the words themselves because we will assume that the language expresses the legislative intent." Szczapa v. United Parcel Service,Inc., 56 Conn. App. 325, 329, 743 A.2d 622, cert. denied, 252 Conn. 951,748 A.2d 299 (2000). In this case, the language used in § 5-192p is not particularly instructive on the issue at hand because the statute refers to the benefits available thereunder as "benefits," "disability retirement," "retirement income," "disability benefits" and "disability retirement allowance."
"[W]hen the language used [within a statute] is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all of its provisions . . . [as well as] its title." (Internal quotation marks omitted.) State v. Ryan, 48 Conn. App. 148, 157, 709 A.2d 21, cert. denied, 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876,119 S.Ct. 179, 142 L.Ed.2d 146 (1998). Section 5-192p is included in chapter 66 of title 5 of the General Statutes. "This chapter is known and shall be cited as the `State Employees Retirement Act.'" General Statutes § 5-132. Section 5-192p is contained in part V of chapter 66, which applies, inter alia, to "all members who first join the state employees retirement system after July 1, 1984 [tier II members]. . . ." General Statutes § 5-192e. Section 5-192p is titled "Disability retirement" and it provides, in pertinent part: "(a) . . . If a member of tier II, while in state service, becomes so disabled as a result of any injury received while in the performance of his duty as a state employee, he is eligible for disability retirement, regardless of his period of state service or his age." If she had not become disabled, the defendant, as a state trooper in active service, would have been eligible for retirement benefits when she reached the age of forty seven and completed twenty years of service as a state trooper, pursuant to General Statutes §5-173 (a). This statute is found at part IV of chapter 66. Thus both statutes are part of the state employees retirement act. Under both §§ 5-173 and 5-192p, the benefits a retiree is entitled to receive are calculated by a formula which takes into account the number of years the employee has, or would have, worked for the state. See, e.g., § 5-173
(b) and § 5-192p. These factors all indicate that the benefits the defendant is eligible to receive under § 5-192p are retirement benefits that she became eligible to receive on an accelerated basis because she became disabled while performing her duty as a state employee.
This conclusion finds further support when § 5-192p is compared to General Statutes § 5-142, the statute that provides disability benefits to state police. Section 5-142 is entitled "Disability compensation," and is contained in chapter 65 of title 5. This chapter is CT Page 10802 named "Disability Compensation and Death Benefits." It provides benefits, in pertinent part, to: "(a) . . . any member of the Division of State Police . . . [who] sustains any injury (1) while . . . in the actual performance of such police duties . . . and (2) that is a direct result of the special hazards inherent in such duties . . ." General Statutes § 5-142 (a). If an employee is totally incapacitated, the benefits available to him or her under this section are determined by the employee's salary and do not depend on the number of years the employee has worked for the state. Id. Thus the disability benefits available to the defendant are distinguishable from the benefits available to her under § 5-192p.
It is noted that in the context of uninsured motorist benefits, Connecticut courts have acknowledged that insureds may be treated differently depending on the nature of the other damages they have recovered. Roy v. Centennial Ins. Co., 171 Conn. 463, 474-75, 370 A.2d 1011
(1976). Thus, the fact that a regulation is interpreted to permit an insurer to take a deduction against an insured who receives disability benefits but not against an insured who receives disability retirement benefits does not invalidate the regulation. The Supreme Court recognizes that "the regulations of the insurance commissioner may present some apparently anomalous results under certain circumstances." Id. "The `injustice' resulting from the unequal treatment accorded insured motorists under . . . almost identical situations is, however more illusory than real. The purpose of mandatory insurance, minimum liability levels, and uninsured motorists protection requirements can only be to ensure that certain minimum protections are afforded all motorists. These statutory devices cannot serve to eliminate all differences in treatment which may result to an insured due to the varying levels of protection carried by motorists or because of varying financial resources of motorists. . . . This court cannot . . . by a tortured construction of the statutory and regulatory provisions, indirectly eliminate possible inequities in coverage, where the legislature has failed to do so directly." Id., 475-76.
Under the previous versions of the applicable statute and regulation, the majority of the arbitrators correctly determined that the benefits the defendant is eligible to receive under § 5-192p are retirement benefits and thus that the amount thereof should not be deducted from the amount of uninsured motorist benefits awarded to the defendant.
As noted above, § 38a-336 (b) was amended by Public Act 00-143 effective October 1, 2000. Pursuant to this amendment, at present and as of the date that the arbitrators issued their decision on October 30, 2000, § 38a-336 (b) provides, in pertinent part: "An insurance company shall be obligated to make payment to its insured up to the CT Page 10803 limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. In no event shall there be any reduction of uninsuredor underinsured motorist coverage limits or benefits payable for amountsreceived by the insured for Social Security disability benefits paid orpayable pursuant to the Social Security Act, 42 U.S.C. § 301, et.seq. . . ." (Emphasis added.)
As of November 1, 2000, § 38a-334-6 (d) provides in pertinent part: "Limits of liability. (1) The limit of the insurer's liability [for damages the insured is entitled to recover from an uninsured motorist for bodily injury] may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury, (B) paid or are payable under any workers' compensation law, or (C) paid under the policy in settlement of a liability claim. . . ." Thus, the regulation was amended to delete the provision that permitted an insurer to reduce the limits of its liability for damages by amounts paid or payable to the insured under "any . . . disability law."
As noted by the parties, in Vitti v. Allstate Ins. Co., supra,245 Conn. 195, the Connecticut Supreme Court held that pursuant to the previous version of § 38a-334-6 (d), an insurer is entitled to reduce the limits of its liability for the bodily injury an uninsured motorist causes to an insured by the amount of federal social security benefits the insured is eligible to receive. In the decision, the court acknowledged that "[t]he ability to obtain social security disability benefits is a financial resource available to the plaintiff that results in a discrepancy in treatment [between the damages an insured can recover from an adequately insured tortfeasor and one who is uninsured] that the statute and the regulation simply do not attempt to eliminate." Id., 191. From the manner in which the legislation was amended, it is apparent that in so doing, the legislature was reacting to the decision in Vittiv. Allstate Ins. Co. and attempting to address this discrepancy. Indeed, the statement of purpose of the House Bill No. 5144, from whichP.A. 00-143 was derived, is "[t]o provide that the amount of uninsured or underinsured motorist coverage that an insured receives under his or her policy is not reduced by any Social Security disability benefits that the insured receives." CT Page 10804
If the amendments are applied in this case, the plaintiff would not be entitled to reduce the limit of its liability to the defendant by the benefits the defendant is eligible to receive under § 5-192p, regardless of whether the benefits are characterized as disability benefits or retirement benefit. If P.A. 00-143 was enacted to clarify that the legislature did not intend to permit insurers to set off an insureds social security disability benefits from the limit of the insurer's liability for uninsured motorist benefits, the amendments should be applied retroactively. See such cases as:
 1. Quarry Knoll II Corp. v. Planning and Zoning Commission, 256, Conn., 674, 722, 725-726 (2001).
 2. Colonial Penn Insurance Co. v. Bryant, 245 Conn., 710, 718, 719
(1998).
 3. Lumbermen's Mutual Casualty Co. v. Huntley, 223 Conn. 22, 29
(1992).
The court does not reach the issue of retroactivity and has decided the case on the issues decided by the arbitrators and argued by the parties.
Accordingly, the Motion to Vacate, the arbitration award is denied.
RUSH, J.