## GENERAL ACCIDENT INSURANCE COMPANY
## v. JASON MORTARA*

Superior Court, Judicial District of New Haven
File No. CV-11-6020225-S

Memorandum filed January 26, 2012

*Proceedings*

*David A. Leff*, for the plaintiff.

*Michael L. Wilson*, for the defendant.

A. ROBINSON, J. This action arises out of a July 31, 1988 Motor Vehicle Collision that occurred in Ocean City, New Jersey. The relevant underlying facts are not

---

* Affirmed. *General Accident Ins. Co.* v. *Mortara*, 141 Conn. App. 571, 62 A.3d 553 (2013).

in dispute, and the parties stipulated to them. The defendant, Jason Mortara, was a passenger in a vehicle that was driven by his mother when it was negligently struck by Richard Ednie. At the time of the collision, Ednie, who was a resident of Pennsylvania, had a State Farm Insurance policy with liability limits of $100,000 per person and $300,000 per accident. Following the collision, a lawsuit was filed in New Jersey on behalf of Mortara against Ednie. The claim was settled for $95,000. At the time of the collision, Mortara lived in Connecticut with his mother, and his mother's vehicle was insured by the Pennsylvania General Insurance Company, which is a subsidiary of the plaintiff, General Accident Insurance Company. The policy was issued in Connecticut and included underinsured motorist coverage with a limit of $300,000.

Mortara asserted an underinsured motorist claim against the plaintiff and subsequently requested that the claim be submitted to arbitration. The following three questions were submitted to the arbitration panel: "1. Does Connecticut law or New Jersey law apply to the application and interpretation of the . . . Pennsylvania General Insurance Policy? . . . 2. If New Jersey law applies, has [the defendant] complied with the *Longworth* line of decisions of the New Jersey courts, so as to allow [the defendant] Jason Mortara to recover under the under-insured motorist coverage of the Mortara vehicle policy? 3. If recovery is allowed, what is the amount of fair, just and reasonable compensation for [the defendant] Jason Mortara?" The parties stipulated that if Connecticut law applies, then the defendant's failure to exhaust Ednie's State Farm Insurance policy would preclude recovery of underinsured motorist benefits pursuant to Connecticut law.

On April 5, 2011, the majority of the panel decided, in a two page decision, that pursuant to *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359,

641 A.2d 783 (1994), New Jersey law applied and that the defendant complied with the procedure set forth in *Longworth* v. *Van Houten*, 223 N.J. Super. 174, 538 A.2d 414 (App. Div. 1988). The panel awarded the defendant a gross sum of $275,000, which was adjusted to $160,125.54.[1]

On May 6, 2011, the plaintiff filed an application to vacate the arbitration award on the ground that pursuant to General Statutes § 52-418 (a) (4), "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." In response, the defendant filed an application to confirm the arbitration award and memorandum of law in support on August 8, 2011. On September 16, 2011, the plaintiff filed a reply brief. The matter was heard before the court on September 28, 2011. For reasons more fully articulated herein, this court grants the application to vacate the arbitration award, and denies the application to confirm it.

I

STANDARD OF REVIEW

"[T]he standard of review for arbitration awards is determined by whether the arbitration was compulsory or voluntary. This court recognized the fundamental differences between voluntary and compulsory arbitration in *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). The court concluded therein that [when] judicial review of compulsory arbitration proceedings required by [General Statutes § 38a-336 (c)] is undertaken . . . the reviewing court must conduct a de novo review of the

---

[1] The gross award was adjusted to reflect the $100,000 liability payment credit under the tortfeasor's insurance policy and a collateral source credit of $14,874.86.

interpretation and application of the law by the arbitrators.[2] The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings. Id., 191. A reviewing court therefore must conduct a de novo review of the arbitrators' decision on coverage issues because such issues are subject to compulsory arbitration." (Internal quotation marks omitted.) *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 404 n.5, 891 A.2d 959 (2006).

The parties do not agree on the appropriate standard of review. On the one hand, the defendant argues that the arbitration was voluntary and unrestricted. Therefore, the defendant contends that the proper standard of review is for the court to simply determine whether the award conforms to the submission. On the other hand, the plaintiff claims that under *Quigley-Dodd* v. *General Accident Ins. Co. of America*, 256 Conn. 225, 772 A.2d 577 (2001), this court must apply the de novo standard of review because the choice of law question is an insurance coverage issue subject to mandatory arbitration.

In *Quigley-Dodd* v. *General Accident Ins. Co. of America*, supra, 256 Conn. 225, the Connecticut Supreme Court provided a framework for determining whether a choice of law issue involves a coverage issue and is therefore subject to compulsory arbitration under § 38a-336 (c) and de novo review. The plaintiff in *Quigley-Dodd* sought to vacate an arbitration award on the ground that the panel improperly applied Colorado

---

[2] General Statutes § 38a-336 (c) provides in relevant part: "Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. . . ." The policy in the present case was issued in 1988, and at that time, the above provision was contained in General Statutes (Rev. to 1987) § 38-175c. The content of the two provisions is substantively the same, but the provision within § 38-175c began with "[e]very such policy" instead of "[e]ach automobile liability insurance policy . . . ."

rather than Connecticut law when a Colorado statute placed a cap on damages recoverable from a tortfeasor. Id., 230. The plaintiff argued on appeal that the trial court improperly decided that the choice of law issue was not a coverage issue and that the arbitration decision was therefore not subject to de novo review. Id., 231. In determining that the choice of law issue was a damages, not a coverage, issue, the court reasoned: "[I]n cases in which the issue before the arbitrators is a choice of law issue, when the substantive laws of the respective states deal with the claimant's right to recover damages from the uninsured motorist, or the measure of such damages, rather than the recovery of damages from an insurer, the choice of law issue is a damages issue and not a coverage issue, even though the choice of law may affect the amount of damages awarded to the claimant, and, ultimately, the amount recovered from the insurer. The essential point is that when the focus is on tort law governing the right to recover damages from the uninsured motorist or the measure of such damages, the issue is a damages issue, and when the focus is on law governing recovery against an insurer as such, the issue is a coverage issue." Id., 242.

The court in *Quigley-Dodd* provided the following hypothetical to further illustrate the distinction between a damages and a coverage issue: "State A has a law providing that punitive damages against a tortfeasor are limited to attorney's fees and nontaxable costs. State B has no such limitation. These laws do not deal with the rights of the various parties under an insurance contract, as such, but govern the measure of damages. Accordingly, a choice of law question involving them would affect the amount that the claimant could recover from the tortfeasor and would be a damages issue. Under the law of state B, however, a claimant may not recover punitive damages from a tortfeasor's insurer,

while state A permits such recovery. These laws govern the recovery against an insurer, and a choice of law question involving them would be a coverage question subject to de novo review." Id. The court concluded: "Accordingly, whether the choice of law question in this case is a coverage issue turns on whether the substantive laws of the respective states govern, on the one hand, the claimant's right to recover damages from the uninsured motorist or the measure of such damages, or, on the other hand, the recovery of damages from the insurer." Id., 243.[3]

The choice of law issue in the present case concerns the defendant's recovery from the plaintiff-insurer, not the tortfeasor. The stipulated facts do not raise an issue as to whether the defendant was entitled to recover from the tortfeasor. Rather, the issue is whether New Jersey law or Connecticut law applies to the determination of whether the plaintiff is legally obligated to pay the defendant pursuant to an underinsured provision in the insurance policy. As the parties have stipulated, if Connecticut law applies, "the failure to exhaust the

---

[3] Since the Supreme Court's decision in *Quigley-Dodd* v. *General Accident Ins. Co. of America*, supra, 256 Conn. 225, Connecticut courts have consistently acknowledged that arbitration decisions governing the rights of parties to an insurance contract are coverage issues subject to de novo review. See *Kinsey* v. *Pacific Employers Ins. Co.*, supra, 277 Conn. 404 n.5 (noting that question of whether the arbitration panel's decision regarding an insurance statute that required notice of a reduction in uninsured or underinsured motorist coverage to be written in twelve point font was a coverage issue); *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 755 n.7, 882 A.2d 44 (2005) (noting that the parties agreed that an issue as to whether the plaintiff was entitled to offset the amount that the defendant recovered under a legal malpractice policy from the limits of the defendant's uninsured/ underinsured motorist policy was a coverage issue to be reviewed de novo); *Savoie* v. *Prudential Property & Casualty Ins. Co.*, 84 Conn. App. 594, 599, 854 A.2d 786 (determining that issue as to whether the defendant insurance company, which provided the plaintiff with underinsured motorist coverage, was entitled to a setoff for insurance payments made on behalf of both tortfeasors was a coverage issue subject to de novo review), cert. denied, 271 Conn. 932, 859 A.2d 930 (2004).

tortfeasor's . . . [p]olicy precludes [the defendant's] underinsured motorist claim under Connecticut law." Thus, because "the focus is on law governing recovery against an insurer as such"; id., 242; the choice of law issue is a coverage issue, which is subject to compulsory arbitration and de novo review.

## II

### CHOICE OF LAW ANALYSIS

Having determined that the appropriate standard of review is de novo, the threshold issue is whether New Jersey or Connecticut law applies to the present case. "In determining the governing law, a forum applies its own conflict-of-law rules . . . ." *Gibson* v. *Fullin*, 172 Conn. 407, 411–12, 374 A.2d 1061 (1977). Without explanation, or articulation, the arbitration panel relied upon *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 359, in determining that New Jersey law controls the present case. The plaintiff seeks to vacate the award on the ground that the panel improperly applied *Williams* to the present case. The defendant counters that the facts of *Williams* are "identical" to the facts of the present case and that the panel's reliance upon *Williams* was appropriate.

### A

#### Applicability of *Williams* v. *State Farm Mutual Automobile Ins. Co.*

In *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 359, the plaintiff, who was a Connecticut resident, was injured in a collision that occurred in New York and involved a tortfeasor with a California driver's license and a vehicle registered in New York. Id., 361. The plaintiff had exhausted the tortfeasor's policy and sought to recover uninsured/ underinsured motorist benefits from the defendant

insurance company. Id., 362. The plaintiff's uninsured motorist policy with the defendant provided that the plaintiff could only recover damages that he was *"legally entitled to collect from the owner or driver* of an uninsured motor vehicle." (Emphasis in original; internal quotation marks omitted.) Id., 362 n.3. Under New York's no fault insurance law, the plaintiff could only recover from a tortfeasor if he had been seriously injured or had sustained over $50,000 of basic economic loss. Id., 363. The plaintiff demanded arbitration. Id., 362. The arbitration panel concluded that although Connecticut law applied to the insurance contract, New York law applied to the issue of whether the plaintiff could recover damages from the tortfeasor. Applying New York law, the panel concluded that the plaintiff was not entitled to collect from the defendant. Id., 363–64. The plaintiff sought to vacate the arbitration award on the ground that the arbitration panel should have applied Connecticut law, not New York law, to the issue of whether the plaintiff was able to recover under his insurance policy. Id., 364.

The *Williams* court held that "under either a tort or a contract analysis, the appropriate law to apply is that of New York. Thus, we need not determine which analysis to use." Id. In reaching this conclusion using a contract analysis, the *Williams* court examined the meaning of the phrase " 'legally entitled to collect' . . . ." Id., 365. The court reasoned that in order to demonstrate that he is " 'legally entitled to collect' " from the driver of an uninsured vehicle, a plaintiff must show more than fault. Id., 366. " 'Legally entitled to collect damages from the owner or driver of an uninsured motor vehicle,' means that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability." Id., 367–68. The court further

reasoned that in a lawsuit against the tortfeasor in New York, the tortfeasor would have been able to raise the New York no-fault insurance limit as a substantive defense. Id., 368. The court determined: "Thus, the tortfeasor's liability under the contract must be determined in light of New York no-fault insurance law." Id.

The court further reasoned that even under Connecticut law, the plaintiff would not be able to recover from the defendant because pursuant to § 38a-336, the plaintiff would have had to first exhaust the tortfeasor's insurance policy before recovering underinsured motorist benefits. Id., 369. Thus, the plaintiff would have been required to sue the tortfeasor in New York. Id. The court concluded: "Consequently, even if we were to accept the plaintiff's contention that the case is governed by Connecticut's law of contracts and motorist insurance, the dispositive legal standards would be imported from New York." Id.

The *Williams* court then examined the facts using a torts choice of law analysis. Id. The court reasoned that under the "most significant relationship" test of §§ 6 and 145 of 1 Restatement (Second), Conflict of Laws (1971), New York law also applies. *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 372. In applying the tort choice of law factors listed in § 145, the court relied upon comment (e) to § 145, which provides in relevant part: "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law . . . ." 1 Restatement (Second), supra, § 145, comment (e). The court further reasoned that pursuant to the policy concerns listed in § 6, Connecticut's interests were not harmed by the application of New York law. *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 373–75.

*Williams* is inapplicable to the present case, notwithstanding the fact that it is somewhat factually analogous

with respect to the first two facts, namely, that the plaintiffs in both cases were Connecticut residents who were injured in car accidents in other states with drivers from other states. Also, similar to the insurance contract in *Williams*, the insurance contract in the present case includes a clause limiting uninsured motorist recovery under the policy to "damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle.' " However, unlike the plaintiff in *Williams*, in the present action, the defendant's ability to recover from the tortfeasor is not at issue. There is no dispute in the present case regarding the defendant's ability to recover from the tortfeasor under either New Jersey or Connecticut law.

In *Williams*, the principal issue in dispute was whether the claimant could recover from the tortfeasor. The answer to that question differed depending upon whether one applied New York law or Connecticut law. It does not, in this case. Even if this court were to apply New Jersey tort principles in this case, that application would not resolve the issues that are in dispute.

In *Williams*, the court had to determine whether New York tort law or Connecticut tort law was applicable to the plaintiff's claim. The court ultimately determined that New York tort law applied. New York tort law contains a jurisdictional restriction, prohibiting a plaintiff from recovering from a tortfeasor unless the economic loss claim is valued at more than $50,000. Even though the plaintiff in *Williams* had exhausted the tortfeasor's insurance policy after he filed an action in New York, the court still found that the plaintiff could not legally recover from the tortfeasor (as those terms are meant to be used) because his economic losses were less than $50,000. Thus, the *Williams* court never reached the contractual issue which is before this court.

In the instant matter, the choice of law issue relates, not to the applicable tort law, but to a contractual term

requiring exhaustion. This court does not have to determine the appropriate state laws affecting the defendant's right to recover from the tortfeasor. Applying either Connecticut law or New Jersey law will yield the same result. Accordingly, *Williams* is inapplicable to the present case, and the arbitration panel erred in relying upon and applying *Williams*.

## B

### Contract or Tort Choice of Law Principles

Having determined that *Williams* does not control the present case, the court must still decide whether Connecticut or New Jersey law applies to the underinsured motorist claim, utilizing a contract or tort choice of law analysis. "An action to recover under an automobile insurance policy is not an action in tort but, rather, an action in contract. The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a *contractual* obligation arising under the policy of insurance." (Emphasis in original; internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 384, 698 A.2d 859 (1997).

The Connecticut Supreme Court has also acknowledged, however, that "underinsured motorist benefits are sui generis. They are contractual, but they depend on principles of tort liability and damages. Whether in any particular case underinsured motorist benefits should be treated as are other types of insurance *must depend on a case-by-case analysis of the underlying purpose and the principles that apply to such benefits.*" (Emphasis in original; internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 204–205, 901 A.2d 666 (2006).

This court notes that a majority of trial courts have treated underinsured motorist benefits as other types

of insurance benefits and thus, have applied contract choice of law principles to cases involving underinsured or uninsured motorist claims. See *Chen* v. *Nationwide Property & Casualty Ins. Co.*, Superior Court, judicial district of New Britain, Docket No. CV-09-5014317 (November 19, 2010) (*Swienton, J.*) (51 Conn. L. Rptr. 1); *Anely* v. *Allstate Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-98-0166413 (January 9, 2002) (*Hon. Frank H. D'Andrea, Jr.*, judge trial referee); *Simpson* v. *National Union Fire Ins. Co.*, Superior Court, judicial district of Hartford, Docket No. CV-98-0579769 (September 8, 2000) (*Peck, J.*) (28 Conn. L. Rptr. 64); *Bellavita* v. *Allstate Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-95-0327000 (August 12, 1999) (*Melville, J.*) (25 Conn. L. Rptr. 229). This court agrees with the reasoning of these courts that the appropriate choice of law principles to apply are the contract ones.

## C

### Contract Law Analysis

The plaintiff argues that because the present case concerns an insured domiciled in Connecticut, a vehicle garaged in Connecticut and an insurance contract issued in Connecticut, *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 922 A.2d 1043 (2007), mandates that the present case should be analyzed using Connecticut's choice of law principles for contracts. This court agrees.

In *American States Ins. Co.*, the Connecticut Supreme Court examined choice of law in the context of insurance contracts. The court reasoned: "In *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, [243 Conn. 401, 413, 703 A.2d 1132 (1997)], we abandoned the ancient lex loci contractus approach to choice of law, which looked primarily to the law of the state in which the contract was made. In its place, we

adopted the most significant relationship approach of the Restatement (Second) of Conflict of Laws, for analyzing choice of law issues involving contracts. . . . Thus, the choice of law determination in this case involves an interplay among §§ 193, 188 and 6 of the Restatement (Second), supra. Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188. Section 188, in turn, directs us to other provisions for specific types of contracts. With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second) . . . ." (Citation omitted; internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 461–62.

1

### § 193 of Restatement: Principal Location Of the Insured Risk

"Section 193 of the Restatement (Second) provides that [t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. Thus, § 193 establishes a *special presumption* in favor of application, in liability insurance coverage cases, of the law of the jurisdiction that is the principal location of the insured risk. . . .

"The commentary to § 193 notes that [a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be *during at least the major portion of the insurance period*. In the great majority of instances, the term of a contract

of fire, surety or casualty insurance will be relatively brief, and it will usually be possible to predict with fair accuracy where the risk will be located, or at least principally located, during the life of the policy. . . . *So, in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.* . . . The Restatement (Second) considers the principal location of the insured risk to be a matter of intense concern to the parties to the insurance contract because [it] has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 462–63.

The record before this court indicates that the principal location of the insured risk was Connecticut. In reviewing the insurance policy, it appears likely that the parties to it anticipated that the Mortara vehicle would be principally garaged in Connecticut during the term of the insurance policy. Further, the policy was issued in Ridgefield, Connecticut, to Jacqueline Mortara, a Bethel, Connecticut, resident. Additionally, the policy includes an amendment of the policy provisions for Connecticut, which makes references to Connecticut law, thus demonstrating that the principal location of the insured risk was a factor in formulating the terms of the policy. Accordingly, because the record indicates that the parties understood that the principal location of the insured risk was Connecticut, there is a special presumption in favor of the application of Connecticut law to the present case.

2

### § 188 of Restatement: State With Most Significant Relationship

This presumption in favor of the "principal place of risk" rule, however, is not insurmountable. "In order

to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6 (2) of the Restatement (Second), supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6 (2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling. As we indicated in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417, the analysis begins but does not end with § 193. . . .

"[Section] 6 (2) of the Restatement (Second) [of Conflict of Laws], which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the most significant relationship: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. . . .

"Furthermore, [§] 188 (2) [of the Restatement (Second), supra] lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Comment (e) to § 188 (2) states that the forum, in applying the principles of § 6 to determine the state

of most significant relationship, should give consideration to the relevant policies of all potentially interested states and the relative interests of those states in the decision of the particular issue. The states which are most likely to be interested are those which have *one or more* of the [enumerated] contacts with the transaction or the parties." (Citations omitted; emphasis added; internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 467–68.

Applying all the requisite factors, Connecticut has the most compelling and significant interest in this matter. The first two factors to consider under § 188 (2) of the Restatement (Second), supra, are "the place of contracting" and "the place of negotiation of the contract . . . ." 1 Restatement (Second), supra, § 188 (2) (a) and (b). There is no dispute that the policy was issued in Ridgefield, Connecticut. And, there is no evidence that any negotiations occurred elsewhere. Thus, the place of contracting and negotiation of the contract was Connecticut.

Unlike some states, Connecticut has no "bright line" rule for determining the third factor, "the place of performance," which is discussed in 1 Restatement (Second), supra, § 188 (2) (c). Some trial courts have determined that the place where the contract is made should be deemed the place of performance. See *Anely* v. *Allstate Ins. Co.*, supra, Superior Court, Docket No. CV-98-0166413. This court concurs with that approach. Because the insurance contract was formed in Connecticut, this court concludes that the place of performance was Connecticut. Significantly, the defendant offered no evidence to suggest that New Jersey, and not Connecticut, was the place of performance.

The fourth factor is the "location of the subject matter of the contract," which this court treats similarly to the "place of performance . . . ." 1 Restatement (Second),

supra, § 188 (2) (d). As indicated above, the principal location of the insured risk was Connecticut, and thus, the location of the subject matter of the contract was also Connecticut.

The final factor is the "domicil[e], residence, nationality, place of incorporation and place of business of the parties." Id., § 188 (2) (e). The commentary to § 188 provides: "The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party is domiciled or does business." Id., § 188, comment. At the time of contracting, the named insured, Jacqueline Mortara, was domiciled in Connecticut. While the plaintiff has a Philadelphia, Pennsylvania, address listed on the policy, the parties have stipulated that the policy "was issued by the company through its agent, Donald Haacke Associates, Inc. of Ridgefield, Connecticut . . . ." Accordingly, the plaintiff was at the very least conducting business in Connecticut.

All these factors support the finding that Connecticut is the state with the most significant relationship to the subject matter of this lawsuit.

### 3

### Does New Jersey Have a Sufficient Interest
### To Overcome the § 193 Presumption?

The five factors set forth in § 188 (2) of the Restatement (Second) all indicate that Connecticut law should be applied in the present case, and none of the factors implicate the law of New Jersey. While the contracts analysis heavily favors the application of Connecticut law, the court must now evaluate the overarching policy considerations enumerated in § 6 (2) to determine whether New Jersey has an interest that is

"sufficiently compelling" to overcome the presumption under § 193. See *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 469–70. Although the defendant has not explicitly argued that New Jersey has a "sufficiently compelling" interest in the present case, the court will nonetheless examine each of the policy factors set forth in § 6 (2). The first consideration is "the needs of interstate and international systems . . . ." 1 Restatement (Second), supra, § 6 (2) (a). Connecticut trial courts have agreed that "concern for the needs of the interstate system does not weigh so heavily here where the defendant insurer has multiple places of business." *Bellavita* v. *Allstate Ins. Co.*, supra, 25 Conn. L. Rptr. 231, citing *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of Danbury, Docket No. 326873 (December 8, 1998) (*Levin, J.*) (23 Conn. L. Rptr. 627, 636). Thus, this factor is not particularly significant in the present case.

"Section 6 (2) (e) of the Restatement (Second) requires that we consider the basic policies underlying the particular field of law . . . . The commentary to § 188 of the Restatement (Second), indicates that [p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts, for the purpose of § 6 (2) (e) of the Restatement (Second). . . . Additionally, protection of justified expectations is also relevant to the factor of certainty, predictability, and uniformity of result under § 6 (2) (f) of the Restatement (Second). The need for protecting the expectations of the parties gives importance in turn to the values of certainty, predictability and uniformity of result. For unless these values are attained, the expectations of the parties are likely to be disappointed." (Citation omitted; internal quotation marks omitted.) *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, 261 Conn. 601, 612–13, 804 A.2d 201 (2002).

As discussed above, the court's analysis of the relevant insurance policy indicates that at the time of contracting, the parties understood that Connecticut law would apply to the policy. The application of Connecticut law in the present case would therefore protect the justified expectations of the parties to contract and would in turn promote the values of certainty, predictability and uniformity of result.

Sections 6 (2) (b) and (c) of the Restatement (Second), supra, direct the court to consider the "relevant policies of the forum" and the "relevant policies of other interested states and the relative interests of those states in the determination of the particular issue . . . ." In the present case, Connecticut is the forum state. But, the accident occurred in New Jersey. Therefore, New Jersey has an interest in the resolution of the present matter, too.

a

Connecticut UIM

Connecticut law regarding underinsured motorist benefits is set forth in § 38a-336. Section 38a-336 (b) provides in relevant part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ."

The Connecticut Supreme Court has recognized "the dual purposes of underinsured benefits of providing

compensation for the victims of underinsured motorists, while simultaneously adhering to the principle that uninsured motorist coverage is to place the insured in the same position as, but no better position than, the insured would have been had the underinsured tortfeasor been fully insured." (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, supra, 279 Conn. 205. "Indeed, underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . . Rather, [t]he public policy of § 38a-336 is to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained *an adequate policy of liability insurance*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 310, 673 A.2d 474 (1996).

### b

### New Jersey UIM

New Jersey law concerning underinsured motorist coverage is contained in New Jersey Statutes § 17:28-1.1. Pursuant to § 17:28-1.1, insurance carriers must provide the insured with the option to purchase underinsured motorist coverage. Section 17:28-1.1 e (1) defines "underinsured motor vehicle" and provides in relevant part: "A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds . . . ."

The New Jersey Supreme Court has reasoned that the effect of the statute is "to require an insurer, to the extent of coverage, to pay its insured the damages that the insured is entitled to recover from the underinsured tortfeasor, less the amount of the tortfeasor's coverage. . . . Accordingly, the mandatory availability of UIM [(underinsured motorist)] coverage for all insureds reflects a strong public-policy interest in providing through automobile insurance adequate compensation to New Jersey motorists for injuries sustained in accidents with underinsured motorists." (Citation omitted.) *Zirger* v. *General Accident Ins. Co.*, 144 N.J. 327, 334, 676 A.2d 1065 (1996). "UIM is meant to serve a limited purpose. It is not intended to provide coverage to compensate injured parties for the full value of the injuries caused by the tortfeasors. The clear [l]egislative intent is that UIM should serve as a gapfiller. . . . The principle of UIM coverage is not to make the injured party whole, but to put that person in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an insured under the policy in question." (Citation omitted; internal quotation marks omitted.) *Selective Ins. Co. of America* v. *Thomas*, 179 N.J. 616, 620, 847 A.2d 578 (2004).

c

### Connecticut UIM Law Compared To New Jersey UIM Law

The policies of both Connecticut and New Jersey reflect the principle that underinsured motorist coverage should provide insurance protection when the liability coverage of the tortfeasor is inadequate, but neither state aims to make the insured whole. Additionally, both states have an exhaustion requirement to prevent the insured from receiving a windfall. Under Connecticut law, the requirement that the insured must fully exhaust the tortfeasor's liability coverage before

recovering underinsured motorist benefits is absolute. See *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 811, 663 A.2d 377 (1995); *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990). New Jersey applies the exhaustion requirement of its underinsured motorist statute differently.[4] However, the defendant has not provided, and the court's independent research has not revealed, any differences in *policy* "so 'fundamental' as to override the special presumption" favoring the application of the law of Connecticut, the principal location of the insured risk, to the present case. *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 475.

In addition, the last factor under § 6 (2) of the Restatement (Second), supra, the "ease in the determination and application of the law to be applied," favors

---

[4] In *Longworth* v. *Van Houten*, supra, 223 N.J. Super. 174, the court articulated a procedure by which the insured could potentially pursue underinsured motorist benefits after reaching a settlement for less than the limits of the tortfeasor's liability policy. The *Longworth* procedure was subsequently adopted by the New Jersey Supreme Court in *Rutgers Casualty Ins. Co.* v. *Vassas*, 139 N.J. 163, 652 A.2d 162 (1995). In adopting *Longworth*, the court reasoned: "[W]hen an insured under an automobile insurance policy providing UIM benefits is involved in an accident and undertakes legal action against the tortfeasor, *the insured must notify the UIM insurer of that action.* If, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then *the insured should again notify the UIM insurer* of that fact.

"If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with [*Longworth*] . . . move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying

the application of Connecticut's straightforward exhaustion requirement in the present matter.[5] In considering all of the relevant choice of law factors, the location of the collision in New Jersey is relatively insignificant when compared to Connecticut's multiple contacts with the present case. Thus, any policy interest New Jersey may have in the present case is not "sufficiently compelling" to overcome the presumption in favor of applying the Connecticut law pursuant to § 193.

## III

## CONCLUSION

For the foregoing reasons, the court concludes that Connecticut law applies to the present case. Because Connecticut law applies, the defendant is precluded from recovering from the plaintiff. Thus, the defendant's motion to confirm the arbitration award is denied, and the plaintiff's application to vacate the award is granted.

---

the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor." (Emphasis in original.) Id., 174–75.

[5] Comment (j) to § 6 (2) of the Restatement (Second), supra, cautions, however, that "[t]his policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results."

