******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GENERAL ACCIDENT INSURANCE
COMPANY *v.* JASON MORTARA
(SC 19146)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued April 22—officially released November 4, 2014*

*David A. Leff*, for the appellant (defendant).

*Michael M. Wilson*, for the appellee (plaintiff).

*Opinion*

ESPINOSA, J. This appeal presents a choice of law question: when a dispute between an insurance carrier and its insured regarding the insurance carrier's obligation to pay underinsured motorist benefits requires a determination of whether the relevant policy provisions provide coverage for the claim, is the issue properly resolved under the choice of law rules governing claims sounding in tort or claims sounding in insurance and contract? Our existing precedent already has conclusively answered this question. As we explain herein, it is well established that in such an instance, the choice of law determination is made by applying the insurance and contract choice of law rules set forth in §§ 6, 188, and 193 of 1 Restatement (Second), Conflict of Laws (1971). The defendant, Jason Mortara, appeals from the judgment of the Appellate Court, which affirmed the judgment of the trial court vacating the arbitration award rendered in his favor.[1] The defendant claims that the arbitration panel properly determined that this court's decision in *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 641 A.2d 783 (1994), applying choice of law rules for tort claims, dictates that New Jersey law rather than Connecticut law governs his claim for uninsured motorist benefits under the motor vehicle insurance policy issued by the plaintiff, General Accident Insurance Company. To the contrary, we conclude that pursuant to this court's decisions in *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 698 A.2d 859 (1997), and *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 703 A.2d 1132 (1997), the Appellate Court, in its opinion adopting the decision of the trial court, properly applied §§ 6 (2), 188 and 193 of the Restatement (Second), contract choice of law, to determine that Connecticut law governed the claim. See *General Accident Ins. Co.* v. *Mortara*, 141 Conn. App. 571, 573, 62 A.3d 553 (2013). Accordingly, the judgment of the Appellate Court is affirmed.

In its memorandum of decision, the trial court set forth the following relevant facts and procedural history. "The defendant . . . was a passenger in a vehicle that was driven by his mother [Jacqueline Mortara] when it was negligently struck by Richard Ednie. At the time of the collision, Ednie, who was a resident of Pennsylvania, had a State Farm Insurance policy with liability limits of $100,000 per person and $300,000 per accident. Following the collision, a lawsuit was filed in New Jersey on behalf of [the defendant] against Ednie.[2] The claim was settled for $95,000. At the time of the collision, [the defendant] lived in Connecticut with [Jacqueline Mortara], and [her] vehicle was insured by the Pennsylvania General Insurance Company, which is a subsidiary of the plaintiff . . . . The policy was issued in Connecticut and included underinsured motorist cov-

erage with a limit of $300,000.

"[The defendant] asserted an underinsured motorist claim against the plaintiff and subsequently requested that the claim be submitted to arbitration. The following three questions were submitted to the arbitration panel: 1. Does Connecticut law or New Jersey law apply to the application and interpretation of the . . . Pennsylvania General Insurance [Company] policy? . . . 2. If New Jersey law applies, has [the defendant] complied with the *Longworth* [v. *Van Houten*, 223 N.J. Super. 174, 538 A.2d 414 (App. Div. 1988)] line of decisions of the New Jersey courts, so as to allow [the defendant] . . . to recover under the [underinsured] motorist coverage of [Jacqueline Mortara's] vehicle policy? 3. If recovery is allowed, what is the amount of fair, just and reasonable compensation for [the defendant] . . . ? The parties stipulated that if Connecticut law applies, then the defendant's failure to exhaust Ednie's State Farm Insurance policy would preclude recovery of underinsured motorist benefits pursuant to Connecticut law.

"On April 5, 2011, the majority of the panel decided, in a two page decision, that pursuant to *Williams* v. *State Farm Mutual Automobile Ins. Co.*, [supra, 229 Conn. 359], New Jersey law applied and that the defendant complied with the procedure set forth in *Longworth* v. *Van Houten*, [supra, 223 N.J. Super. 174]. The panel awarded the defendant a gross sum of $275,000, which was adjusted to $160,125.54.

"On May 6, 2011, the plaintiff filed an application to vacate the arbitration award on the ground that pursuant to General Statutes § 52-418 (a) (4), the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. In response, the defendant filed an application to confirm the arbitration award and memorandum of law in support on August 8, 2011. On September 16, 2011, the plaintiff filed a reply brief. The matter was heard before the court on September 28, 2011." (Footnotes altered; internal quotation marks omitted.) *General Accident Ins. Co.* v. *Mortara*, 52 Conn. Supp. 522, 523–24, 72 A.3d 482 (2013). On the basis of its conclusion that Connecticut law governed the claim, the trial court granted the plaintiff's application to vacate the arbitration award and denied the defendant's application to confirm the award. Id., 544. The defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed the judgment of the trial court in a per curiam decision and adopted its memorandum of decision as a proper statement of the relevant facts, issues and applicable law. *General Accident Ins. Co.* v. *Mortara*, supra, 141 Conn. App. 571. This certified appeal followed.

"[T]he standard of review for arbitration awards is determined by whether the arbitration was compulsory

or voluntary. This court recognized the fundamental differences between voluntary and compulsory arbitration in *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). The court concluded therein that whe[n] judicial review of compulsory arbitration proceedings required by [General Statutes § 38a-336 (c)][3] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings. Id., 191. A reviewing court therefore must conduct a de novo review of the arbitrators' decision on coverage issues because such issues are subject to compulsory arbitration." (Footnote added; internal quotation marks omitted.) *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 404 n.5, 891 A.2d 959 (2006).

Because the substantive issue in the present case concerns a question of insurance coverage, which is subject to compulsory arbitration, our review is de novo. We explained in *Quigley-Dodd* v. *General Accident Ins. Co. of America*, 256 Conn. 225, 238, 772 A.2d 577 (2001), that a "question involving the interpretation of a policy term or governing law that affects how much [the insured] can recover from the insurer . . . is a coverage question . . . ." By contrast, if the question turns on "the measure of damages that can be recovered from the tortfeasor . . . the question is a damages issue . . . ." (Emphasis omitted.) Id., 239. The first question submitted for arbitration—whether Connecticut law or New Jersey law applied to the application and interpretation of the defendant's insurance policy—made clear that the disputed issue between the parties concerned coverage under the policy rather than damages recoverable from the tortfeasor. Specifically, the plaintiff denied the defendant's claim for benefits under the underinsured motorist provision in the insurance policy issued to Jacqueline Mortara on the basis that pursuant to Connecticut law, the defendant's failure to exhaust the limits of the tortfeasor's policy released the plaintiff from any obligation to pay underinsured motorist benefits pursuant to the insurance policy. See General Statutes § 38a-336 (b).[4]

Our conclusion that the appeal presents a coverage issue also means that the choice of law rules governing claims sounding in insurance and contract govern the defendant's claim, rather than the rules governing claims sounding in tort. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 384 ("An action to recover under an automobile insurance policy is not an action in tort but, rather, an action in contract. The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a contractual obligation arising under the policy of insur-

ance." [Emphasis omitted; internal quotation marks omitted.]).

We therefore turn to the choice of law rules governing the present case. "In *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, [supra, 243 Conn. 413], we abandoned the ancient lex loci contractus approach to choice of law, which looked primarily to the law of the state in which the contract was made. In its place, we adopted the most significant relationship approach of the Restatement (Second) . . . for analyzing choice of law issues involving contracts. . . . Thus, the choice of law determination in this case involves an interplay among §§ 193, 188 and 6 of the Restatement (Second) . . . . Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188. Section 188, in turn, directs us to other provisions for specific types of contracts. With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second) . . . .

"Section 193 of the Restatement (Second) provides that [t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. Thus, § 193 establishes a *special presumption* in favor of application, in liability insurance coverage cases, of the law of the jurisdiction that is the principal location of the insured risk. . . .

"The commentary to § 193 notes that [a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be *during at least the major portion of the insurance period.* In the great majority of instances, the term of a contract of fire, surety or casualty insurance will be relatively brief, and it will usually be possible to predict with fair accuracy where the risk will be located, or at least principally located, during the life of the policy. . . . *So, in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.* . . . 1 Restatement (Second), supra, § 193, comment (b), p. 611. The Restatement (Second) considers the principal location of the insured risk to be a matter of intense concern to the parties to the insurance contract because [it] has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend. So the cost of automobile liability or of collision insurance will probably be higher if the

place where the automobile will be principally garaged during the term of the policy is an urban, as opposed to a rural, community. Id., § 193, comment (c), p. 612." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 461–63, 922 A.2d 1043 (2007).

"In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6 (2) of the Restatement (Second) . . . provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6 (2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling. As we indicated in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417, the analysis begins but does not end with § 193. . . .

"[Section] 6 (2) of the Restatement (Second) . . . which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the most significant relationship: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. . . .

"Furthermore, [§] 188 (2) [of the Restatement (Second)] lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Comment (e) to § 188 (2) states that the forum, in applying the principles of § 6 to determine the state of most significant relationship, should give consideration to the relevant policies of all potentially interested states and the relative interests of those states in the decision of the particular issue. The states which are most likely to be interested are those which have one or more of the [enumerated] contacts with the transaction or the parties. Id., § 188 (2), comment (e), p. 579.

"The appropriate starting point under § 188, therefore, is identification of the policy underlying the relevant law of each state having one or more of the listed contacts. If application of a particular state's law would further its underlying policy, that state is said to have

an interest. See id., § 6 (2) (c). If two or more states have conflicting interests, the court must determine which gives rise to the most significant relationship. Id., § 188 (1). . . . Moreover, application of the § 6 and § 188 factors is neither mathematical nor mechanical." (Citations omitted; internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 467–68.

In a well reasoned opinion, the trial court properly applied these principles to the defendant's claim. As to § 193 of the Restatement (Second), the court stated: "The record before this court indicates that the principal location of the insured risk was Connecticut. In reviewing the insurance policy, it appears likely that the parties to it anticipated that the [insured] vehicle would be principally garaged in Connecticut during the term of the insurance policy. Further, the policy was issued in Ridgefield, Connecticut, to Jacqueline Mortara, a Bethel, Connecticut, resident. Additionally, the policy includes an amendment of the policy provisions for Connecticut, which makes references to Connecticut law, thus demonstrating that the principal location of the insured risk was a factor in formulating the terms of the policy. Accordingly, because the record indicates that the parties understood that the principal location of the insured risk was Connecticut, there is a special presumption in favor of the application of Connecticut law to the present case." *General Accident Ins. Co.* v. *Mortara*, supra, 52 Conn. Supp. 535.

The court next turned to §§ 188 and 6 (2) of the Restatement (Second), and properly concluded that the interests of New Jersey are not sufficiently compelling to overcome the presumption established under § 193 that Connecticut law applies. *General Accident Ins. Co.* v. *Mortara*, supra, 52 Conn. Supp. 544. The court began by considering the five contacts enumerated in § 188, and noted that because the contract was formed in Ridgefield, Connecticut, "the place of contracting and negotiation of the contract was Connecticut." Id., 537. That fact, taken together with the failure of the defendant to offer any evidence to suggest that New Jersey, rather than Connecticut, was the place of performance of the contract establishes that Connecticut was the place of performance. Id. The subject matter of the contract, the insured vehicle, was principally located in Connecticut. Finally, Jacqueline Mortara, the named insured, was domiciled in Connecticut, and although the plaintiff has a Philadelphia, Pennsylvania address listed on the policy, the plaintiff was doing business in Connecticut. Id., 538.

Finally, the court turned to the policy considerations set forth in § 6 (2) of the Restatement (Second), and correctly concluded that those considerations support rather than overcome the presumption that Connecticut law governs the defendant's claim. *General Accident*

*Ins. Co.* v. *Mortara,* supra, 52 Conn. Supp. 544. The court properly concluded that where, as in the present case, the insurer has multiple places of business in various states, the first consideration, the needs of interstate and international systems, is not a factor accorded significant weight. Id., 539; see *Bellavita* v. *Allstate Ins. Co.,* Superior Court, judicial district of Fairfield, Docket No. CV-95-0327000-S (August 13, 1999) (25 Conn. L. Rptr. 229, 232).

The fourth, fifth and sixth factors—the protection of justified expectations, the basic policies underlying the particular field of law, and certainty, predictability and uniformity of result—all support the conclusion that Connecticut law governs. 1 Restatement (Second), supra, § 6 (2) (d), (e) and (f). With respect to the fifth and sixth factors, this court has noted that "[t]he commentary to § 188 of the Restatement (Second), indicates that [p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts, for the purpose of § 6 (2) (e) of the Restatement (Second). . . . Additionally, protection of justified expectations is also relevant to the factor of certainty, predictability, and uniformity of result under § 6 (2) (f) of the Restatement (Second). The need for protecting the expectations of the parties gives importance in turn to the values of certainty, predictability and uniformity of result. For unless these values are attained, the expectations of the parties are likely to be disappointed." (Citation omitted; internal quotation marks omitted.) *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.,* 261 Conn. 601, 612–13, 804 A.2d 201 (2002). Accordingly, the justified expectations of the contracting parties regarding the law that will apply to the insurance contract are relevant to all three of these factors. The trial court, therefore, properly concluded that because the parties understood at the time of contracting that Connecticut law would apply to the policy, the application of Connecticut law "protect[s] the justified expectations of the parties to [the] contract and would in turn promote the values of certainty, predictability and uniformity of result." *General Accident Ins. Co.* v. *Mortara,* supra, 52 Conn. Supp. 540.

Turning to the second and third factors of § 6 (2), the trial court correctly observed that they direct the court to consider the "relevant policies of the forum" and the "relevant policies of other interested states and the relative interests of those states in the determination of the particular issue . . . ." Id.; see 1 Restatement (Second), supra, § 6 (2) (b) and (c). Applied to the present case, these two factors require the court to consider the relevant policies and interests of Connecticut and New Jersey on this issue. As the trial court explained, the policies of both Connecticut and New Jersey with respect to the exhaustion requirement applied to underinsured motorist coverage in motor vehicle insurance policies are to "provide insurance

protection when the liability coverage of the tortfeasor is inadequate, but neither state aims to make the insured whole. Additionally, both states have an exhaustion requirement to prevent the insured from receiving a windfall. Under Connecticut law, the requirement that the insured must fully exhaust the tortfeasor's liability coverage before recovering underinsured motorist benefits is absolute. See *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 811, 663 A.2d 377 (1995); *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990). New Jersey applies the exhaustion requirement of its underinsured motorist statute differently."[5] *General Accident Ins. Co.* v. *Mortara*, supra, 52 Conn. Supp. 542–43. The court additionally observed, however, that "the defendant has not provided, and the court's independent research has not revealed, any differences in *policy* so fundamental as to override the special presumption favoring the application of the law of Connecticut, the principal location of the insured risk, to the present case. *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 475." (Emphasis in original; internal quotation marks omitted.) *General Accident Ins. Co.* v. *Mortara*, supra, 543.

Finally, the trial court noted that the seventh and final factor of § 6 (2) of the Restatement (Second), the "ease in the determination and application of the law to be applied, favors the application of Connecticut's straightforward exhaustion requirement in the present matter." (Internal quotation marks omitted.) Id., 543–44; see 1 Restatement (Second), supra, § 6 (2) (g). The court properly concluded that considering all of the factors together provides further support for the conclusion that Connecticut law governs in the present case. *General Accident Ins. Co.* v. *Mortara*, supra, 52 Conn. Supp. 544.

The defendant's argument that the arbitration panel correctly concluded that this court's decision in *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 359, controls the present case and dictates the application of New Jersey law to his claim is unpersuasive. In *Williams*, which involved a claim for uninsured motorist benefits, the disputed issue did not pertain to insurance coverage, but to damages that would have been recoverable from the tortfeasor. Specifically, in that case, the defendant insurer denied benefits to the plaintiff on the basis that "the plaintiff could not maintain an action against the tortfeasor because he had not sustained either 'serious injury' or basic economic loss in excess of $50,000," as required under New York law. Id., 363. Thus, the disputed issue in *Williams* implicated tort law principles rather than contract law principles.[6] It is true that the court in *Williams* concluded that because the choice of law test under either a tort or a contract analysis yielded the same result, i.e., the application of New York law to the claim, it was not necessary to determine whether the claim

implicated tort or contract principles. Id., 364. *Williams* was decided, however, before *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 413, in which we adopted the contract choice of law test applying §§ 6 (2), 188 and 193 of the Restatement (Second). Because *Williams* did not apply the same test that we now apply in a contract choice of law analysis, the trial court, and therefore also the Appellate Court, properly concluded that *Williams* does not apply to the present case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly apply *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 641 A.2d 783 (1994), when it affirmed the trial court's judgment vacating the arbitration award?" *General Accident Ins. Co.* v. *Mortara*, 308 Conn. 945, 66 A.3d 886 (2013).

[2] The accident occurred in New Jersey.

[3] General Statutes § 38a-336 (c) provides: "Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

We note that the policy in the present case was issued in 1988, and at that time the binding arbitration provision of § 38a-336 (c) was codified at General Statutes (Rev. to 1987) § 38-175c, and contained substantively the same language. In 1991, § 38-175c was transferred to § 38a-336. We refer herein to the provisions of § 38a-336 unless otherwise indicated.

[4] General Statutes § 38a-336 (b) provides in relevant part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage *after the limits of liability under all* bodily injury liability bonds or *insurance policies applicable at the time of the accident have been exhausted* by payment of judgments or settlements . . . ." (Emphasis added.)

[5] The trial court explained: "In *Longworth* v. *Van Houten*, supra, 223 N.J. Super. 174, the court articulated a procedure by which the insured could potentially pursue underinsured motorist benefits after reaching a settlement for less than the limits of the tortfeasor's liability policy. The *Longworth* procedure was subsequently adopted by the New Jersey Supreme Court in *Rutgers Casualty Ins. Co.* v. *Vassas*, 139 N.J. 163, 652 A.2d 162 (1995). In adopting *Longworth*, the court reasoned: '[W]hen an insured under an automobile insurance policy providing [underinsured motorist] benefits is involved in an accident and undertakes legal action against the tortfeasor, *the insured must notify the* [*underinsured motorist*]*insurer of that action.* If, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then *the insured should again notify the* [*underinsured motorist*] *insurer* of that fact.

" 'If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the [underinsured motorist] insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the [underinsured motorist] insurer must further allow the insured the benefit of the [underinsured motorist] coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with [*Longworth*] . . . move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own [underinsured motorist] coverage. As well, the [underinsured motorist] carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in [underinsured motorist] bene-

fits compared with paying its insured the settlement offer plus [underinsured motorist] benefits and itself maintaining a subrogation action against the tortfeasor.' . . . Id., 174–75." (Emphasis in original.) *General Accident Ins. Co.* v. *Mortara*, supra, 52 Conn. Supp. 543–44 n.4.

[6] The defendant claims that *Williams* stands for the proposition that tort law principles always apply to a choice of law analysis arising from a claim for underinsured motorist benefits. The court's analysis in *Williams* does not lead to such a conclusion, and instead is consistent with the rule we adhere to in the present case, that the question of which principles govern the choice of law analysis depends on whether the claim implicates a question of the obligation of the insurer to provide coverage, or the measure of damages recoverable from the tortfeasor.